Cole, Ch. J.
On the trial it appeared that the plaintiff was the owner of the colt, worth $100, which was foaled about the 15th of May, 1866; that it was a horse colt, and had never been altered, and was found on the afternoon of Monday, November 12, 1867, lying in the ditch of the defendants’ road, near West Liberty, with three of its legs broken, valueless, and had to be killed; the defendants’ road was fenced on both sides; but, near where the colt was found, there were bars made for the convenience of land owners in that vicinity in hauling *452 wood from their several wood lots near thereto ; the colt appeared to have been injured a day or two before; the bars were down when the colt was found, and were so left by a person not connected with or in the employ of the defendant, but when they were let down does not appear; the defendants’ hands, employed for that purpose, passed along the road there once a day, and always put up the bars when found down, except sometimes in winter when parties were hauling wood; that they passed along there on Saturday afternoon, November 10, 1867, and think the bars were up, but are not positive; the plaintiff had not seen his colt for two or three days before he found him injured as above; that horse colts were not generally altered till two years old, and were mot troublesome to mares or dangerous earlier than that — sometimes pampered colts might be. Under the instructions of the court, the jury found for the plaintiff. The defendant makes substantially two points in his appeal.
l. live stock: ning at large, First: The bourt instructed the jury that the statute prohibiting stallions from running at large was not intended to apply to colts until they were of such an age as to be troublesome to mares or dangerous to be a]t large. This is complained of as erroneous; because the statute says that no stallion shall be allowed to run at large; and this position is claimed to be greatly fortified by the fact that a previods statute limited the prohibition to stallions “ of the age of two years and upward.” Ordinarily a change in the language of a statute implies an intent to change the meaning and effect of the law. Such, too, was the effect given the statute under the construction held by the court; for, by it, a colt might be found a stallion before it was of the age of two years. Webster defines the word “stallion ” a horse not castrated, a stock horse. A horse colt just foaled is a horse not castrated; but he is not a stock horse. Taking the word “ stallion ” according to the common understanding, also, *453 it would not include an uncastrated horse colt under the age and condition at which it was troublesome to mares or dangerous to be at large. The court did not err to the defendant’s prejudice in its instructions on this point.
2 -R.ATr.nntr. Sabuity for stock killed. Second It is claimed that the verdict was against the evidence, and that the court erred in refusing to set it aside. We concur in this view. It is the duty of railroad companies, under our statute, £0 fence their roads; and if they fail to do so they are absolutely liable for stock injured, in the absence of the willful act of the owner. It is also their duty to maintain and keep up the fences after they are made; and for a failure to do this they would be likewise liable. But before that liability would attach in the latter case, in the absence of wrong on their part, they must have knowledge that the fence is out of repair, and a reasonable time thereafter to put it in repair. If a fence shall be blown down by a hurricane, and immediately thereafter stock shall enter the roadway and be killed, without negligence, the company would not be liable. But after the company has knowledge that the fence is down, which knowledge may be shown by direct proof or by the lapse of such time as would afford a reasonable presumption of it, they must use proper diligence in putting it up, and, for neglect in this regard, would be liable, as for omitting to build a fence. The same rule and principle would apply to the leaving of gates open or bars down.
In this case there can be no doubt that the colt was injured by the engine and cars of the defendant; but there is no proof of any negligence by defendant’s employees respecting the injury. There is, perhaps, no reasonable doubt that the colt entered the roadway through the bars; but the proof shows that the defendant was blameless for the bars being down, since it is shown that another so left them; and it does not appear when they were left down. The testimony shows that the colt was injured either Sat *454 urday or Sunday. For aught that appears, he may have entered and been injured directly after the bars were left down by another, and before the defendant could have known they were down or by any reasonable diligence have put them up. To hold the defendant liable under such proof would be to make it, and all other similar corporations, liable to damages without fault or neglect on their part, and at the carelessness, caprice or malice of any person. The essential fact wanting in the plaintiff’s case is, the proof that defendant knew the bars were down and neglected to put them up. This knowledge, as before remarked, may be shown by proof, director circumstantial, or by the lapse of such time as that within which the company should, and by ordinary diligence would, have obtained such knowledge. After they have such knowledge they must use at least ordinary diligence to repair the defect whatever it is. Inasmuch as there is no showing of fault or negligence on the part of defendant the verdict cannot be sustained.
Reversed.