## Small v. The C., R. I. & P. R. Co.

1. **Railroads: LIABILITY FOR FIRES: NEGLIGENCE.** Section 1289 of the Code, providing that railway companies "shall be liable for all damages by fire that is set out or caused by the operation" of their roads, does not create an absolute liablity, but makes the fact of an injury so occurring only *primà facie* evidence of negligence, which may be rebutted by proof of freedom from negligence.

> *Argument* 1. The statute provides that the manner of recovery shall be the same as for injury to stock, but in the latter case the company can escape liability by showing freedom from negligence.

> *Argument* 2. Exposure to fire is a part of the injury for which right-of-way damages are allowed, and it is presumed to be paid for when such damages are paid.

> *Argument* 3. Where a statute is of doubtful construction the public interest should be considered, and public interest would forbid the making of railway companies absolute insurers for all the property which may happen to be destroyed by fire set by the operation of their roads.

> *Argument* 4. At common law the doctrine prevailed in this State that contributory negligence would defeat a recovery for property destroyed by fire set by a railway company. BECK, CH. J., and DAY, J., *dissenting*.

*Appeal from Poweshiek Circuit Cour*

WEDNESDAY, MARCH 19.

ACTION to recover for an elevator and other property burned by a fire alleged to have been caused by the operating of the defendant's road. There was evidence tending to show that sparks from one of the defendant's engines set fire to an elevator belonging to some person other than the plaintiff, standing about twenty feet from the road. From this elevator the fire was communicated to the plaintiff's elevator standing about seventy feet therefrom. There was a general denial by the defendant, and evidence was introduced by it tending to show that there was no want of care upon its part, and that the fire was not caused by the operating of its road.

There was a trial by jury, and verdict and judgment for the plaintiff. The defendant appeals.

*Wright, Gatch & Wright,* for appellant.

*Fairall, Bonorden & Ranck,* for appellee.

ADAMS, J.—An opinion was filed in this case, in which the writer hereof concurred, affirming the judgment of the Circuit Court—Justices SEEVERS and ROTHROCK dissenting. Afterward a rehearing was granted, and the case has been reargued with the learning and ability commensurate with its importance.

The question presented is as to whether the defendant is absolutely liable, without regard to negligence, if the fire was set 1. RAILROADS: out by sparks escaping from one of its engines, liability for or whether its liability must be based upon negligence. gence. ligence; the fact of the injury, however, if occurring as alleged, being *prima facie* evidence of negligence. The question is to be determined by the construction of a statute. The court below held, and so instructed the jury, that, under the statute, the liability was absolute.

At the time the statute was enacted the question had often been raised whether the fact of injury by escape of sparks from a railroad locomotive should not be regarded as *prima facie* evidence of negligence at common law. In several of the States it was held that it should. The reason given for imposing upon the company the burden of proving that it has exercised due care is that the company knows or should know precisely what care it has exercised, and has the means of proving it. The person injured has not ordinarily the same knowledge nor means of proof. In this State, however, it was held that the burden was upon the plaintiff to establish negligence, and that, too, by evidence other than the mere fact of the injury by escape of sparks. See *Gandy v. The C. & N. W. R. Co.,* 30 Iowa, 420, and authorities collated upon both sides. Such, then, at the time the statute was enacted was the rule in this State.

In the conflict of decisions other States had adopted by statute the rule which imposes upon the company the burden of proving care. It is contended by the appellant that our Legislature, influenced by the same considerations, has merely fallen into the general course of legislation upon this subject, and adopted the same rule. The position is plausible, at all events, and we state it as an introduction to our examination of the statute, which must show by its own terms, interpreted in the light of the considerations which are applicable, whether the Legislature designed to effect a more radical change.

Section 1289 of the Code provides for a liability for stock injured or killed by reason of a want of a fence where the company has a right to fence. It provides that where stock is injured or killed by reason of a want of such fence, the owner may recover by merely showing the injury or destruction of the property. It also contains a provision which is in these words: "Any corporation operating a railway shall be liable for all damages by fire that is set out or caused by operating of any such railway, and such damage may be recovered by the party damaged in the same manner as set forth in this section in regard to stock."

The question as to whether this statute creates an absolute liability, or only makes the fact of the injury *prima facie* evidence of negligence, has never been determined by this court. In *Rodemacher v. The M. & St. P. R. Co.*, 41 Iowa, 297, it seems to have been assumed that it creates an absolute liability; but the only point decided was that the act is not unconstitutional. It is, of course, not unconstitutional if construed as the defendant contends for. The question as to whether it is susceptible of such construction is now presented for the first time.

The first clause of the provision might seem to create an absolute liability. It makes the company liable for all fires caused by the operating of its road. If this provision stood alone it would go far in support of the plaintiff's construction,

although it would not necessarily sustain it, as we will here-after endeavor to show. But the provision is coupled with another providing for the manner of recovery, and this latter provision seems entirely superfluous, if an absolute liability is created by what precedes it. The party injured must, in any case, show an injury by escape of sparks or fire from the road. If the question of negligence is excluded no other issue is tendered, and no other question can arise; the man-ner and the only manner of recovery would be by showing the single fact necessary in the very nature of the case. Now, if this is all, it seems incredible that the manner of recovery should be deemed to call for a specific provision.

But, in our opinion, this is not all. The provision is that a person may recover for injury by fire in the same manner as for injury to stock. The manner of recovering for injury to stock is by showing the injury by the company, and that it occurred by reason of a want of a fence. This makes a *prima facie* case of negligence, and the burden is devolved upon the company to show itself free from negligence. This it may do, but in order to do it it must show a freedom from negligence in the matter of a fence. If it were negligent in that, it would be liable without negligence in other respects. But there must be negligence somewhere to make the com-pany liable. *Aylesworth v. The C., R. I. & P. R. Co.*, 30 Iowa, 459; *Perry v. The D. S. W. R. Co.*, 36 Iowa, 102; *McCor-mick v. The C., R. I. & P. R. Co.*, 41 Iowa, 195. This is the essential fact in the determination of this case.

It is contended, however, that it is not proper to say that the company may be guilty of negligence in not fencing, because the duty of fencing is not imposed upon the com-pany by law. It is true that the company may omit to fence, and properly too, if it prefers to pay for all injuries to stock for which it is made liable by reason of a want of a fence. But where there is an omission to fence, and an injury occurs for which the company is made liable by reason of the omis-

sion, it is scarcely ingenuous to say that the omission is not negligence.

If we are correct in the foregoing, then the manner of recovering for injury to stock, to which reference is made, pertains simply to the mode and measure of proof necessary to show a *prima facie* liability for such injury, and it follows that the design is to provide what is necessary to show a *prima facie* liability for fires.

In this connection it is important to observe that the liability for injury to stock occurring by reason of a want of a fence should, according to the strict letter of the statute, be absolute. But this court has held otherwise in the cases above cited. The letter has been made to yield to what is deemed the spirit of the statute, as not precluding the company from escaping liability if it can show that it was without fault. In construing that part of the same section which provides for liability for fires, we must recognize the same principle.

Indeed, in the latter case it is hardly necessary, as in the former, to override the letter of the statute. The language is: "The company shall be liable for all damages by fire that is set out or caused by the operating of its railway." To hold that an absolute liability has been created by the statute we must take the word *caused* to include its use in the remotest possible sense. If a locomotive is overturned by a tornado, and the fire scattered abroad from which fires are set out, the fires, it is true, may be said to be caused by the operating of the road, but only in the sense that they would not otherwise have occurred. Sparks escaping from an ordinary chimney, used in the ordinary way, might be carried by a strong wind to a building in the neighborhood, and if they lodged in material sufficiently combustible a fire might be set out. In such case the fire might be said to be caused by the operating of the chimney, but only in the same remote sense.

Where the person using the chimney was without fault, we should say ordinarily that the fire was caused simply by the

Small v. The C., R. I. & P. R. Co.

wind and sparks. If, in the ordinary use of a locomotive, sparks escape without any fault on the part of the company, and are carried by the wind to combustible material outside of the company's right of way, and a fire is set out from them, the setting out of the fire is not caused by the operating of the road in any different sense from that in the case of the chimney. It is true the operating of the road is more dangerous, but it is not less legitimate; and this is the essential fact so far as this question is concerned. Railroads are not only expressly sanctioned by law, but they have become an important factor in modern civilization. The whole business of the country has crystallized about them. When railroad companies, under the law, have taken and paid for their right of way, they have the same right to use it that any person has to use his property. If in the legitimate use an injury occurs, without any fault in the mode of use, and simply by the intervention of an uncontrollable element of nature, we are to refer the cause to the element and not to the use.

But it is said that where a person for pecuniary profit pursues a business that is necessarily dangerous to others, he may properly be required to indemnify against the danger, or pay for the injuries which occur.

The principle thus broadly stated has never been recognized. The proximity of a planing-mill is more dangerous than that of a railroad. The ordinary life of such property, as estimated by insurers, is but about ten years. Many pursuits, not dangerous, are obnoxious, wherein the same principle applies. The rule is that if the pursuit is not a nuisance, in view of its character or time and place in which it is carried on, and there is no lack of care or skill, persons suffering therefrom are without remedy. It is possible that the rule may work a hardship in some of its applications; but in case of exposure to fire by railroads no hardship exists where the land-owner is compensated for the exposure.

Where compensation is made the parties may be considered as contracting upon good consideration that the risk shall

be carried by the land-owner and not the company, and in such case it may well be doubted whether it would be competent for the Legislature to contravene the contract by providing that the risk should be carried by the company and not the land-owner. We come, then, to a material inquiry as to whether the compensation is embraced in right-of-way damages. That it is, we think the law is well settled.

The exposure which exists in the absence of negligence results necessarily from the operating of the road. It is a necessary element of depreciation. It is true the exposure is rather a consequential than direct injury, but it is not the less to be estimated and paid for by reason of such fact. In *Evansville & Crawfordsville R. Co. v. Dick*, 9 Ind., 433, the court said: "The Legislature cannot authorize either a direct or consequent injury to property without compensation." In *Sabin v. V. Cent. R. Co.*, 25 Vt., 363, the question arose as to whether the land-owner could recover for damages sustained by pieces of rock being thrown upon his land by blasting, in the construction of the road—the work being done with proper care and skill. It was held that he could not, because he must be presumed to have been paid when the right of way was taken. The court said: "The plaintiff had a right to claim, and was of course bound to present his claim, for all damages he was likely to sustain, not only in the running of the road by fires of engines and the like, but by the building of the road by the ordinary mode."

In *Rood v. N. Y. & Erie R. Co.*, 18 Barb., 80, an action was brought to recover for an injury by fire set out by the company to an adjacent wood. The plaintiff had sold and conveyed by deed a right of way to the company out of land of which the wood constituted a part. It was held that the plaintiff could not recover. The court said: "The grantor having conveyed a certain parcel of land for the purpose of a railroad out of a much larger parcel retained by him, the grant is subject to all the consequences necessarily

attendant upon such a use of the same, and particularly such as would result from the running of engines and the consequent exposure of property on his adjacent land to such injury and loss as would naturally result therefrom."

In *Webber v. Eastern R. Co.*, 2 Met., 149, which was a proceeding for assessment of damages for right of way, it was held to be proper to show by an expert that the premium for insurance on a building standing upon the remaining part of the premises would be increased by the proximity of the road.

In *Snyder v. W. U. R. Co.*, 25 Wis., 60, which was also a proceeding for assessment of damages for right of way, witnesses called to estimate the damages were allowed to consider the exposure of the remaining part of the premises to fire.

In *Kucheman & Hinke v. The C., C. & D. R. Co.*, 46 Iowa, 366, the question rose directly as to whether consequential damages were allowable, as for diversion of trade. It was held that they were. The court said: "We are of the opinion that the damages are not limited to the value of the land taken, but include such damages as result proximately from the use for which it is taken." Exposure to fire, so far as it is unavoidable, most certainly results proximately from the use of the road. The exposure, then, is a part of the injury for which right-of-way damages are allowed, and it is presumed to be paid for when such damages are paid.

A provision by the Legislature that notwithstanding such payment the company, and not the land-owner, should sustain whatever loss occurs, if not unconstitutional, would be manifestly unjust; and we are not to put a construction upon a statute which would manifestly effectuate injustice if it is susceptible of a different construction.

It may be that the land on which the plaintiff's elevator was erected was not part of a tract from which the right of way was taken. If so, it cannot be said that the owner of that land was compensated for the exposure under considera-

tion.  But that would not materially affect the argument.
The language of the statute is general, and must have a
general operation.   If the railroad company is made insurer
against any risk of this nature, it is made, according to the
terms of the statute, insurer against all risks of the same
nature, including those for which it has paid the land-owner
in advance.

Where a statute is of doubtful construction it is proper to
give some weight to what might be considered as demanded
or forbidden by the public interest.   This consideration, so
far as it is entitled to any influence in this case, is unfavora-
ble to the construction contended for by the plaintiff.   The
statute, as construed by him, is designed to afford an indem-
nity against carelessness as well as pure accidents.   Railroad
companies cannot control the erection of buildings or the
accumulation of combustibles outside of the one hundred feet
held for right of way.   Cities grow up upon a railroad and
because of it, built, in the absence of ordinances, precisely as
the owner of each building sees fit to build it.   Under the
ruling in *M. & St. P. R. Co. v. Kellogg*, 4 Otto, 469, and
under the construction of the statute in question contended
for by the plaintiff, a railroad company may be held liable
for the destruction of a whole city, occurring without the com-
pany's fault.   It may be held where such accident would not
have occurred but for the improper construction of buildings
or the want of suitable means for extinguishing fires.   Insur-
ance companies require that the insured shall carry a part of
the risk.   Long experience has shown this to be necessary.
But it is scarcely more necessary for the protection of insur-
ance companies than the public.   The statute in question,
under the construction contended for by the plaintiff, is
designed to afford complete indemnity, and it would prove
such, perhaps, in small fires, but probably not in large ones.

It is urged that the statute, construed as the plaintiff
contends for, would have the effect to secure a higher degree
of care on the part of railroad companies; but this is

not so. There is no higher degree of care than faultlessness. For negligence railroad companies are liable without the statute. The only effect, so far as their action is concerned, of imposing upon them the liability in question would be to compel them to increase their charges. It would only make railroads more expensive things to own and operate, and more expensive means of transportation and travel. The burden would fall upon the community at large. The cost of railroads even now consists in part of the right-of-way damages, which, as we have seen, include compensation for the exposure created by them. This, like any other element of cost, enhances their expensiveness as means of transportation and travel. Why in addition to this, and as a part of the expense of operating them, the patrons should be burdened with paying for burned elevators erected by their owners within what they knew, or should have known, was dangerous proximity to the road, or for burned stacks of hay and grain which could have been protected by plowing a few furrows of ground, we are unable to see.

We are aware that there has been a conflict in the decisions upon the question whether at common law, in case where property has been destroyed by fire set out by a railroad company through its fault, the company could escape liability upon the ground that the owner of the property contributed, by his own negligence, to the loss. It does not come within our purpose to collate and compare the decisions. It is sufficient to say that it is the doctrine of this court that contributory negligence will defeat a recovery in such case. *Kesee v. The Chicago & N. W. R. Co.*, 30 Iowa, 78. In that case it was held that the plaintiff could not recover for stacks of grain burned if he was guilty of negligence in not plowing around them, notwithstanding the company might have been negligent. The decision does not appear to have been controlled by what was regarded as the weight of authority. That, indeed, could hardly have been claimed. It is based, apparently, upon what the court deemed to be natural justice. Now if it

is right upon principle that contributory negligence should defeat a recovery where the company is in fault, it is an outrage that contributory negligence should not defeat a recovery where the company is not in fault. Yet it would not if the statute creates an absolute liability.

Stacks of grain are built in close proximity to a railroad at a dry season of the year. They are surrounded by dead grass, stubble, and other combustible material. The railroad company, we will suppose, connot wholly prevent the escape of sparks. Safety to the stacks is to be secured by removing them or plowing around them ; yet the company can do neither. It has no reliance but the prudence of the owner; and yet the statute, if construed as contended for, has deprived him of all motive to be prudent by making the company his insurer to the full value of the stacks. This does not prove, of course, that the Legislature has not perpetrated the outrage in question, but the language used is not such as to induce us to believe it has.

An attempt has been made to evade the necessity of construing the statute by saying that, as a matter of fact, the escape of sparks can be prevented, notwithstanding the testimony to the contrary. Something is urged upon our attention in regard to the possibilities of science. Cases are cited wherein it appears that judges have indulged in this most uncertain of human speculations. We refrain from so doing. We regard it as sufficient if railroad companies employ the best known means and methods. What lies beyond the known it is not the province of courts or juries to consider.

In supposing that the case called for a construction of the statute we think the court below was right, but in construing it as creating an absolute liability, without regard to the negligence of the company, we think the court erred.

REVERSED.

BECK, CH. J., *dissenting.*—I. I cannot assent to the foregoing opinion, and am authorized to say that Mr. Justice DAY

concurs in the conclusions and the arguments in their support which I shall now present.

The first opinion filed in this case sustained the judgment of the court below. I still adhere to it. Having prepared that opinion I may with propriety now use it as an expression of my views upon the questions discussed therein. I present here such parts of it as are applicable to the questions discussed in the foregoing opinion of the majority of this court, which are as follows:

II. The action is brought under Code, § 1289, which is in these words:

"Any corporation operating a railway that fails to fence the same against live stock running at large, at all points where such right to fence exists, shall be liable to the owner of any such stock injured or killed by reason of the want of such fence, for the value of the property or damage caused, unless the same was caused by the wilful act of the owner or his agent; and in order to recover it shall only be necessary for the owner to prove the injury or destruction of the property; and if such corporation neglect to pay the value of or damages done to any such stock, within thirty days after notice in writing, accompanied by an affidavit of such injury or destruction, has been served upon any officer, station or ticket agent employed in the management of the business of the corporation in the county where the injury complained of was committed, such owner shall be entitled to recover double the value of the stock killed, or damages caused thereto; *provided,*   *   *   *.

"The operating a train upon depot grounds necessarily used by the company and public, where no such fence is built, at a greater rate of speed than eight miles per hour, shall be deemed negligence, and render the company liable under this section.

"*And provided further,* that any corporation operating a railway shall be liable for all damages by fire that is set out or caused by operating of any such railway, and such damage may

be recovered by the party damaged in the same manner as set forth in the section in regard to stock, except double damages."

The court gave to the jury an instruction in the following language:

"2. It is provided by statute in this State that any corporation operating a railway shall be liable for all damages by fire that is set out or caused by operating of any such railway. And the question arises in this case whether the defendant is liable, unless it be shown that the fire was caused by the negligence of the defendant or its employes, or whether the liability is an absolute one regardless of the question of negligence. It is, in my opinion, and I instruct you that under this statute, if it be shown by the evidence that the fire was caused by defendant in operating its railway, it is absolutely liable for the damages caused thereby, whether the defendant was or was not guilty of negligence."

An instruction to the effect that plaintiff is not entitled to recover, unless it be shown that the fire was set out through defendant's negligence, was asked by defendant and refused. The giving of the one and the refusal of the other instruction is now complained of by defendant.

Counsel of defendant insist that, in a case of this character, no recovery can be had except upon proof of negligence on the part of defendant. They base their position upon the argument that, under the section quoted, a railroad company is liable for the destruction of stock because of its negligence in failing to fence its track; that the absence of a fence, per se, constitutes negligence, and, therefore, in the case of fire there can be no recovery against the corporation unless some act of negligence is proved or may be inferred. Negligence, they insist, under the first proviso of the act, is the ground of recovery. They conclude, therefore, that as the cases contemplated in the part of the section relating to the destruction of stock depend upon negligence, those contemplated in the last proviso must be based upon the same ingredient; for

damages in the last-named cases are recoverable, by the very language of the section, in the same manner as in the first.

There are two answers to the argument, the first admitting its premise to be true, namely: The existence of negligence is a necessary ingredient of a cause of action for the recovery for stock injured upon the road of the corporation. The argument assumes that negligence for killing stock at points where the corporation had a right to fence, other than depot grounds, consist in the failure to fence. The absence of a fence permits cattle to go upon the road; the negligence is in such permission. It will be observed that the negligence consists in permitting that which the railroad company could prevent. The negligence at the depot grounds in the same manner consists in permitting a rate of speed which the company could prevent.

The same character of negligence is found in the act of permitting fire to escape. The corporation could prevent it; injury results from its escape. The law, therefore, holds it to be negligence. But it may be said that the fire might escape through accident. True, but this does not excuse the company any more than the running of the train through oversight, mistake or accident, at a greater rate than eight miles an hour, would excuse the killing of cattle on the depot grounds, or the failure to build a fence through accident, as the accidental burning of the lumber before the fence was erected, or the like, would excuse the want of a fence. The negligence in each of these cases, as contemplated by the statute, consists of acts of permission: the permission of stock to run on the track, whereby it is destroyed; the permission of a prohibited speed, whereby animals are injured; the permission of fire to escape, whereby property is consumed. The acts are of the same character. But it may be said, as fire must be used in running the engine, the railroad company cannot dispense with it, and whenever used it is liable to escape through accident, and cannot be certainly controlled. But this conclusion we cannot admit. We are of opinion

that contrivances may be applied to engines that would prove just as effectual in preventing the escape of fire as a fence is in preventing cattle going upon a railroad track. Whether such contrivances are in use we know not, and it is not important to inquire; that they may be applied cannot be doubted, when we contemplate the resources which science brings to the use of machinists. At all events, the law, in holding railroad companies liable for damage resulting from fires set out by the engines, presumes they may prevent injuries resulting in that way.

But the more satisfactory answer to the argument under consideration is by the denial of the premise upon which it is based, namely, that the right of action for stock injured depends upon the negligence of the railroad corporations. The law does not require fences to be built, and does not forbid a rate of speed greater than eight miles an hour upon depot grounds. It simply creates a liability for cattle injured when no fences are erected, and the speed is beyond that named. There is no violation of law in failure to erect fences, or in running at a greater speed than is named. The rights of no one are invaded thereby, and the companies exercise an undoubted right in refusing to fence, or in running their trains at a speed exceeding eight miles an hour. Surely, when an act is done which the law does not forbid, which is in conflict with the rights of no one, and is done in the exercise of a right, it cannot be said to be neglect. This court has held that liability of a railway corporation for stock killed at a place where the right to fence existed, and the road was not fenced, exists without regard to the question of negligence. *Spence v. The C. & N. W. R. Co.*, 25 Iowa, 139; *Stewart v. The B. & M. R. R. Co.*, 32 Iowa, 561.

Let us notice carefully the language of the statute, and consider the liability created and the remedy provided.

1. As to liability. A railroad corporation is liable for stock killed at points upon its road when the right to fence exists and no fence is erected. The liability exists in spec-

ified cases; these are, when no fence has been built, and the right to fence exists. The law applies to no other.

2. As to remedy. In order to recover it shall only be necessary for the owner to prove the injury or destruction of his property. Negligence need not be shown.

In the cases contemplated by the statute, as above specified, and in no other, the remedy is applied. Now, it is very plain that the condition of fences and the right to fence have no reference to care or negligence; they are introduced solely as conditions upon which the cases rest. When these conditions are filled liability of the railroad company attaches.

The last clause of the section cited imposes liability upon railroad companies for damages resulting from fire caused by the operating of their roads. There is no condition accompanying the act of setting out fire necessary in order to create liability. It is absolute, without conditions, and depends upon no fact or circumstance other than the fire. No idea of negligence enters into the clause. It is provided that damage may be recovered in the same manner as provided for the recovery in the case of stock killed. This provision does not relate to the liability, but to the remedy. Whatever pertains to the remedy in the preceding part of the section is here referred to, and nothing else. It will, therefore, be readily seen that no idea of negligence enters into the provision creating liability on account of fire. No such idea is in the preceding part of the section, and the reference to the context in the clause under consideration, of course, can convey no thought of negligence. But even if the conditions of fences and the right to fence, in that part of the section creating liability for stock killed, convey the idea of negligence (which we have demonstrated does not exist), the thought of negligence cannot be found in the last clause creating liability for fire, for the plain reason that there are no conditions whatever upon which such liability is made to depend. It is absolute without conditions. The language referring to the manner of recovery, as

we have seen, expresses no condition attached to the liability, but relates to the remedy.

Counsel for defendant cite *De France v. Spencer*, 2 G. Greene, 462, which holds that a statute making a party liable in a civil action for injuries sustained from fire set out by him and permitted to escape, cannot be enforced against him unless he willingly or carelessly permitted the escape of fire. It is insisted that the doctrine of this decision is applicable to the case before us. The statute differs from the one before us in the particular that it is penal, subjecting the party to a fine. Upon information and upon conviction in the criminal proceeding his liability to the party injured accrued. As he could not be convicted unless the act was knowingly and intentionally committed, his civil liability would arise only upon the same conditions. Upon this view the opinion, so far as it holds that the act must be *willingly* or carelessly done, may be supported. But a similar statute was by this court held to impose liability without regard to negligence, under a legislative intention discovered by comparing the statute with another in *pari materia*. *Conn v. May*, 36 Iowa, 241. We need not inquire whether these cases are in conflict. We think that as they construe penal statutes they are not applicable to the case before us, which involves the construction of a statute intended to secure a civil right and its enforcement by action.

III. It is insisted that the fire might be set out from an engine of a railroad company by inevitable accident or the act of God. In such a case, it is claimed, the corporation would not be liable. It is neither necessary nor proper to enter into inquiries suggested by this position. No such question is presented in the record, either by the pleadings or evidence before us. It is not claimed, even in argument, that the fire was set out by inevitable accident. No such question was raised by request for instructions, and had an instruction been requested presenting this view of the law it would have been properly refused as being inapplicable to the testimony. The

instruction given by the court, as above quoted, is not erroneous, even should it be held that inevitable accident would relieve the defendant of liability, for no such defense was raised, and no evidence in support of that theory was before the court.

IV. The fire was not communicated to the property destroyed directly by defendant's engine; it was communicated to another elevator and thence to plaintiff's property.

. It is insisted that the injury suffered by plaintiff is the remote and consequential effect of the defendant's act, and no recovery can be had therefor.

- The rule that damages must be the direct and proximate result of the act complained of, and not the remote and consequential effects, is not the subject of dispute in the profession. But the application of the rule is the subject of constant disagreement in the authorities; cases similar, in fact, with the one before us have been decided differently by the courts. It is impossible to reconcile the books upon this point, and arguments based upon reason could hardly be presented that would meet with general approbation. In our opinion the injury sustained by plaintiff is within the limits of proximate and direct results of the act of defendant for which he may recover. *The Milwaukee & St. Paul R. Co. v. Timothy Kellogg*, 94 U. S. (4 Otto), 469; *Fent v. T., P. & W. Ry. Co.*, 59 Ill., 349; *Kellogg v. The C. & N. W. Ry. Co.*, 26 Wis., 223; *Perley v. Eastern R. Co.*, 98 Mass., 414. See Field on Damages, §§ 50, 664, and notes, for a collection of authorities upon this point.

V. The defendant's counsel next maintain that the statute under which plaintiff's action is brought is unconstitutional. The question thus raised was carefully considered by this court, and the statute was sustained by a unanimous opinion in *Rodemacher v. The Milwaukee & St. Paul Ry. Co.*, 41 Iowa, 297. The arguments upon which that decision was based are quite satisfactory and need not be repeated.

VI. An argument against the law is based upon the pos-

sible consequences that might result in the case of a fire communicated by a railroad engine consuming such great amount of property that the company, by the enforcement of the law, would lose all its property. The statute, it is said, would thus be the means of the destruction of the corporation under a power to be exercised only for its regulation. It would, therefore, it is claimed, destroy vested rights.

The argument is based upon a case of supposed hardship. We may admit the possibility that such case may arise, but it is no ground for holding the act void. The courts would fail utterly in the administration of justice if they were to enforce only such rules that, in no conceivable case, will work hardship. In truth, hardships in the administration of justice are constantly occurring. "Hard cases make bad law," is a familiar legal proverb. But "hard cases" never make "bad law" except when judges modify fixed and established rules to suit the cases, or adopt new rules intended to mitigate their hardships. It is bad enough for "bad law" to be made for real "hard cases;" it would be much worse for judges to anticipate possible hard cases and suit their rulings thereto, rather than adapt them to the rights and obligations of the parties in the cases before the courts.

The question to be determined in passing upon the validity of the statute is this: Is it within the scope of the constitutional power of the State? If so, the power assumed by the law may be exercised without regard to future consequences, even though they might be what counsel call the destruction of the property of a railroad corporation. The State has the right to levy taxes for the protection of the rights of the property, and its own existence. It may, if necessary, be exercised to the extent of condemning and appropriating, by taxation, all the property in the State. Shall we hesitate to enforce the power to tax, on the ground of the disastrous consequences of the exercise of the power to its full extent, which, possibly, at some future day, may be felt by the people?

The argument of counsel, in our opinion, is *not* based upon

proper views of the power of the State, and of the necessity of individuals and corporations submitting their property to the operation of laws intended for the public good, even though cases possibly may arise whereby, under the law, they would be deprived of their property.

VI.   Having above produced the opinion of this court first filed in this case, I will now present other views in support of the construction of Code, § 1289, adopted in the foregoing opinion, which, I think, answer the arguments advanced in the opinion of the majority of this court.   It is claimed in that opinion that recovery for stock killed is based upon negligence of the railroad corporation in not erecting a fence.   This court has held that liability in such cases attaches regardless of the question of negligence.   *Spence v. The C. & N. W. R. Co.*, 25 Iowa, 139; *Stewart v. The B. & M. R. R. Co.*, 32 Iowa, 561.   The negligence referred to in these cases is the omission to build fences; or, more properly speaking, it is held that no negligence is imputed for the failure to erect fences.   The railroad company, then, is not, in law, negligent in failing to fence its track.   In the absence of fences its liability is absolute, and is established by evidence of injury to or destruction of stock.

While the law does not hold the railroad company negligent in not erecting fences, it may raise the presumption of negligence in running the train which causes the injury. The railroad being open to stock the law requires the train to be so operated that no stock will be injured thereby.   If injury does result the law will presume that the train was not operated with the care required by law, namely, so that stock upon the road will not be injured.   Now, in case stock is injured, the law raises a presumption of negligence—not in failing to fence the road, but in running the train so that injury results.   It seems to me that this conclusion cannot be denied.   It is supported by the very reason and spirit of the statute, which intends to preserve from injury stock running at large, which the statute is enacted to protect.   It says to

the railroad corporation: "You may use your road without fencing it, but when you do so your trains must be so operated that no injury results to stock. If your road is unfenced your liability is absolute; you were negligent in failing to discharge the duty the law imposes upon you to run your trains without injury to stock, and you are therefore liable."

To recover for stock injured the plaintiff is required to prove the injury and nothing more. It is true that the plaintiff is required to allege and show that the right to fence existed at the place of the injury, and that no fence was constructed. But this evidence is not for the purpose of establishing negligence in failing to fence the road, but to show that the statute is applicable to the case. It will be remembered that the statute is applicable only to cases where the road, at the place of the injury, is not fenced, and the right exists to fence there. The evidence does not show negligence in omitting to fence, but brings the defendant within the operation of the statute. I think these positions cannot be successfully denied.

I may concede that the language of the last paragraph of section 1289, providing that damage for fires may be recovered "in the same manner" as for injuries to stock, relates to the evidence to be introduced, as is claimed in the majority opinion. In each case the plaintiff must introduce the preliminary proof showing that the defendant comes under the provisions of the statute. In each case the preliminary proof is alike, so far as to show that the defendant is a corporation operating a railroad. In the case of injury to stock the right to fence and the absence of a fence must be further shown. In each case, after it is shown that the statute is applicable to the defendant, the proof of injury establishes the liability. Recovery, therefore, may be said to be had in each case in the same "manner." And it may be further remarked, that negligence of the corporation, in the case of fire, is presumed in the same manner that negligence in running the train is inferred in case of injury to stock.

The statute, for the protection of property adjacent to the railroad, says to the corporation, you may use the dangerous element of fire in operating your trains, but must so use it that no injury results therefrom. If injury does result you will be presumed to have been negligent. In this respect recovery is had against the corporation in the same manner as in cases of injury to stock.

VII.  *Aylesworth v. The C., R. I. & P. R. Co.*, 30 Iowa, 459; *Perry v. The D. S. W. R. Co.*, 36 Iowa, 102, and *McCormick v. The C., R. I. & P. R. Co.*, 41 Iowa, 195, are cited by the majority of the court in the support of their position that recovery is had for injury to stock because of negligence in not building fences.  These cases, I think, do not support that position. They hold that, where fences have been erected, the corporation is not liable for injury to stock if due care is exercised in maintaining the fences, and in keeping them in proper repair.  It is very plain that the liability of the company in such a case is based upon different grounds than it is when its railroad has never been fenced.

VIII.  In my judgment the opinion of my brothers contains many loose and inaccurate expressions as to the cause of the injury where stock is destroyed upon an unfenced railroad.  It is said that in such a case the manner of recovering is by showing the injury "occurred by reason of a want of fence."  It is very plain that the absence of a fence cannot be regarded as a cause of the injury.  The fence is intended to prevent the injury.  Who ever heard the non-existence of a preventive alleged as the cause of an injury? I am assaulted and fail to exercise resistance in the defense of my person; is my non-resistance the cause of my injury? It certainly cannot be claimed in law that the want of precautionary contrivances to prevent an act is its cause.  I think such a position would not even be good in metaphysics. It is certainly bad in law.

IX.  In another part of the opinion an attempt is made to establish the proposition that we must search for a fault or

negligent act in order to find the *cause* of the injury in the case of fires set out by locomotives. If this position be sound, which for the purpose of the case I may here admit, we find the fault, as I have above shown, in the negligence presumed by the law when fires occur from passing trains.

But I confess to little satisfaction in these speculative, metaphysical inquiries into causation. All I care to know is this: The statute declares that the railroad company shall be liable for property burned by fires set out by its engines. I do not see that the corporation could be relieved of liability if we should conclude that the wind had a hand in the work of destruction. I have so little respect for metaphysics that I am very sure it could never satisfy my mind that in such a case the fire was not "set out or caused" by the engine operated upon the road. The simple facts remain that fire was used in operating the engine; that it did escape and burn the property. I care nothing about the agencies which spread the fire. Its source and origin was the engine which set it out and caused the destruction. In just such a case the law declares that the corporation is liable, and right here discussion ought to end.

X. An argument of the majority opinion is based upon the importance and public character of railroads. They are, it is true, constructed and operated for public purposes. This court holds that the people may be taxed to aid in their construction. The Legislature may control their operation. If, in the operation of these public agents, the property of the citizen is destroyed, the law ought to provide for compensation. This is in accord with justice and the spirit of our constitution. Such compensation ought to be rendered by the public agent, the railroad company, destroying the property. To provide for such an eminently just and constitutional remedy the statute in question was enacted.

Common carriers have always been charged by the common law with liability for all losses of goods transported by them, except such as may be caused by the act of God or the public

enemies. They become insurers of the goods they carry. This rule is based upon public policy and the public nature of the employment of carriers. I have never heard complaint of it. So favored is it by the law that it cannot be waived by express contract. As the law makes carriers insurers of the subjects of transportation, why may it not impose the same obligation as to other property exposed to peril by the means used in the prosecution of their public employment? I know of no reason why it may not.

XI. In another part of the opinion of my brothers it is, in effect, admitted that railroad companies do insure against risk of fires set out by their trains, and render compensation in advance by payments made for the right of way for their roads. If the companies do, in this way, pay for such risks, as is claimed by the majority, their arguments against liability, it seems to me, are overthrown by the admission. It is surely competent for the Legislature to so provide that the railroad companies shall render compensation for actual losses by fire set out by their engines, rather than pay for the risk of such losses. Their liability for such risk being admitted, it cannot be denied that legislation may substitute therefor liability for the actual loss.

But this court has decided that the future risk of fire from trains cannot be considered an element of damages for which the land-owner may claim compensation upon condemnation of the right of way. Such risk to buildings and property which may be put upon the land after the construction of the railroad is not to be considered in estimating damages. *Fleming v. The C., D. & M. R. Co.*, 34 Iowa, 353. The doctrine announced in the majority opinion seems to me to be in direct conflict with this decision.

XII. It is insisted by my brothers that the doctrine I contend for would impose the necessity upon railroad corporations of increasing their charges in order to enable them to pay the damages that would be assessed for losses by fire, and that the burden would thus be made to fall upon the

community at large. If this position be admitted, I am unable to discover that it presents an objection to the construction of the statute for which I contend. I think that if the public wants or convenience demand that the property of the citizen be put at hazard, the public ought to render him compensation if it be destroyed. But I think this objection is purely imaginary. The statute in question was enacted more than five years ago. The interpretation I contend for has, I think, been regarded as correct by the profession and the *nisi prius* courts. I may certainly say that the contrary interpretation has not had the approval of the professional mind of the State. But during this period I have never heard it intimated that the charges imposed by railroad companies have been in the least degree affected by the existence of the statute.

·XIII. It is also insisted by the majority of the court that the construction of the statute for which I contend would render a railroad company liable in case the owner of the property burned contributed to its destruction by his own negligence. This is denounced by my brothers as an outrage. I am not required to examine the correctness of the proposition, for I am very clear that the question is not in the case. Indeed, I do not understand that it is so claimed; but the doctrine condemned is announced for the purpose of bringing discredit upon the construction of the statute contrary to the views of the majority. It is a manner of argument hardly admissible in judicial decisions, and is the prolific mother of *dicta* which have given courts and the profession so much trouble. When a case involving this question comes before the court it will be the time to consider it, and until then it cannot be decided.

XIV. The construction adopted by the majority of the court takes all the life out of the statute. It is, in effect, that railroad corporations are relieved of liability under the enactment, when absence of negligence is shown. They were

so relieved of liability before and without the statute. Its enactment was, therefore, vain.

XV. But it is said that, under this construction of the statute, want of negligence may be shown as a defense; that, by the statute, the burden of proof as to negligence is changed. A brief consideration of this position will, I think, show that it is not supported by reason and legal principles.

The rule of law relating to the rights of the parties, as laid down in the majority opinion, is this: A person whose property is burned by fire, communicated by a railroad train, may recover if it was set out through negligence of the employes operating the train. Let the rule be stated briefly in other words: Plaintiff may recover if defendant set out the fire, and defendant was, in the act, negligent. Two things, it will be seen, must exist to fix defendant's liability: *First*, setting out the fire; *second*, negligence. One of these things is just as essential as the other to support the right of plaintiff to recover. So far we have stated the rights of the parties. We will now inquire as to the remedy under the view just stated that the statute changes the burden of proof.

In an action to enforce the liability the *onus* rests upon plaintiff to show the setting out the fire. Here he may rest, of course. If defendant introduces no evidence may plaintiff recover? The theory we are now considering requires the double answer, no and yes—no, for the right to recover rests upon negligence, and that has not been shown; yes, for the burden of showing absence of negligence rests upon defendant, which he has not established.

The rules of the law require a plaintiff to establish his right to recover, and the *onus* rests upon him to show every fact necessary to support that right. In the case before us, as it is regarded by my brothers, the absence of negligence would not be a defense, for the existence of negligence is a necessary ingredient to create a right to recover, and must be shown to establish such right. The defendant, then, is not required to prove a negative, and to show the non-existence

of a necessary fact supporting plaintiff's right to recover. No such course of pleading and practice has ever prevailed in courts under the common law. Yet such a rule of pleading is the necessary consequence of the construction of the statute in question which I am resisting. It cannot be possible that the Legislature intended to establish a practice and course of proceeding so utterly in conflict with the principles of our jurisprudence, so destitute of support from reason, and never ·before heard of in this land.

If the Legislature.intended simply to change the burden of proof, as is claimed by my brothers, surely language would have been employed which would have expressed that intention with reasonable clearness and certainty, and not the language of the statute in question, from which such intention can be gathered, if at all, by strained construction based upon speculation and abstruse reasoning.