Nov. Term,
1857.

THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD Co.
v.
DICK.

</div>

(1) Counsel for the appellant cited 1 Smith's Lead. Cas. p. 252, note; *Clarke* v. *White*, 12 Pet. 178; *Leicester* v. *Rose*, 4 East, 372, 380; *Faucett* v. *Gee*, *Cullingworth* v. *Loyd*, 2 Har. Dig. 2313; *Cecil* v. *Plaistow*, 1 Anst. 202; *Ex parte Hall*, 2 Har. Dig 2313; *Cockshott* v. *Bennett*, *Constantine* v. *Blache*, and *Howden* v. *Haigh*, *Id.* 2314; *Horton* v. *Riley*, 5 *id.* 524; *Bradshaw* v. *Bradshaw*, *Turner* v. *Hoole*, *Smith* v. *Cuff*, 2 *id.* 2313, 2314; *Bruh* v. *Cole*, 4 Sand. (N. Y.) 80; *Feise* v. *Randall*, 1 Esp. 224; *Jackson* v. *Lomas*, 4 T. R. 166;

(2) Mr. *Baker* cited Broom's Leg. Max. 572 to 583, especially 578; *Id.* 209 to 221; *Higgins* v. *Pitt*, 4 Excheq. 312; U. S. Dig. (Ann. for 1847), 123, tit. Composition with Creditors, s. 2.

———·•◦•·———

THE EVANSVILLE AND CRAWFORDSVILLE RAILROAD COM-
PANY *v.* DICK.

<div style="text-align: right">

9   433
149   348

</div>

The legislature cannot authorize either a direct or consequential injury to pro-
perty, without compensation to the owner.
If a private corporation, voluntarily, for their own profit, so construct a work
as necessarily to injure the property of an individual, and their charter gives
no remedy for such injury, they are liable in an action for damages for the
injury, though the work be constructed in a proper manner and place.

APPEAL from the *Knox* Circuit Court.

<div style="text-align: right">

Tuesday,
November 24.

</div>

DAVISON J.—*Dick*, the appellee, was the 'plaintiff, and the railroad company, the defendant.

The case made by the record is as follows: Plaintiff was the owner, and in the possession of real estate in *Knox* county, on the banks of *White* river, below the place where defendant's railroad crosses that stream. The land is sep-arated from the railroad, from which it is distant about one-half mile, by the lands of one *William Decker*. During

Nov. Term,
1857.

THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.
v.
DICK.

floods in the river, a large portion of its waters were accustomed to flow across a narrow neck of bottom land, opposite the lands of the plaintiff, and through a bayou which enters the river a short distance below his lands. The railroad, in approaching the river, passes through the bottom land. And defendants, in constructing it, raised a large and heavy embankment across the bayou and a portion of the bottom, thereby greatly increasing the force and current of the stream at its high stages, and forcing the waters on the plaintiff's land. It was proved that, by reason of the embankment being constructed through the bottom, and across the bayou, the lands of the plaintiff, and his crops growing thereon, were, during the floods in the winter and spring of 1854 and 1855, greatly damaged, &c.

Defendant's answer contains three paragraphs: 1. A general denial of the complaint. 2. That the embankment was erected by the company, by virtue of her acts of incorporation, in a proper and prudent manner. 3. That defendant had properly constructed the embankment, under her charter, more than two years before this action was commenced.

To the second and third paragraphs, demurrers were sustained. And upon the issue made by the general denial, there was a verdict for the plaintiff. Defendant moved for a new trial; but her motion was overruled, and judgment given on the verdict.

The act, by virtue of which the company is incorporated, says that all lands entered upon for materials or the roadway, which are not donated to, or owned by the company, shall be purchased by them of the owners. And in case of a disagreement as to price, the agent of the company may apply to some justice of the peace, to have six freeholders summoned to assess the damages, &c. Local Laws of 1849, pp. 275, 276. To this, there is an amendatory act, which provides that, in case any land owner shall feel aggrieved by the location or construction of such road over his land, or for entering thereon, and taking materials for the construction thereof, and the company have failed to

have his damages assessed, as provided for by their charter, such landholder may file his complaint before some justice of the peace, at any time within two years from the survey and location of the road, &c.   Local Laws, 1851, p. 420.

In view of these provisions, it must be conceded that the special remedy which they provide, does not apply to the case before us; because the railroad was not located over plaintiff's land, his property has not been appropriated to the use of the defendant, nor does he complain of an entry upon his lands for materials or roadway.   The damages which he has sustained could not, therefore, have been assessed by a justice calling six freeholders.   Hence, we are led to inquire whether the plaintiff has any remedy for the injury of which he complains.   Defendants contend, "that no suit can be maintained for the recovery of damages caused by a work authorized by law, and constructed in a proper place and manner, when the law authorizing the work neither gives such damages, nor authorizes such suit."   This doctrine might apply to the case at bar, were the defendants mere trustees, incorporated for the sole purpose of executing a public trust or duty.   Having acted fairly and honorably within their jurisdiction, and they, themselves, having no private interest to subserve, they would not be responsible for a consequential injury, resulting from such acts.   But, in this instance, the party sued is a private corporation.   True, the public benefit may be so far promoted by works authorized to be made by such corporations, that the property of individuals, taken by them by virtue of their charters, may be deemed to be taken for public use, within the constitutional provision on that subject; still, they exercise their corporate privileges under a private grant of the legislature, conferring upon them specific powers for their own direct and private advantage. And the defendants, in this case, being thus a private corporation, there seems to be no reason why they should not, in respect to responsibility for injuries for which their charter allows no remedy, stand on the same ground as individuals, not clothed with corporate privileges.   So far as the interest of the company is concerned, the embank-

<div style="text-align:right">Nov. Term,<br>1857.<br><br>The Evans-<br>ville and<br>Crawfords-<br>ville Rail-<br>road Co.<br>v.<br>Dick.</div>

Nov. Term,
1857.

The Evans-
ville and
Crawfords-
ville Rail-
road Co.
v.
Dick.

ment may be erected "in a proper manner and place," and still be constructed in such a manner as necessarily to injure the plaintiff. And for aught that appears in the record, the road might have been built and completed so as to obviate the injury of which he complains. The well known maxim of the law, *sic utere tuo ut alienum non lædas*, must, therefore, be applied to the decision of this case. Otherwise, we concede the doctrine that a private corporation may, in the erection of a work from which they themselves derive the profit, injure the property of an individual, and are to be protected in doing such injury, without making compensation. This result does not accord with any principle of justice. But this Court has, in effect, decided the question under consideration. In *Tate* v. *The Ohio and Mississippi Railroad Co.*, the defendant had raised an embankment along the street, in front of plaintiff's lot. No part of the lot was appropriated, or directly affected by the construction of the road; but his easement in the street was materially obstructed. The suit was not upon a claim for land taken under the company's charter, but for the recovery of damages resulting from the obstruction, and for the payment of which the charter made no provision. Held, that the plaintiff was entitled to recover. 7 Ind. R. 479.

Suppose the act of incorporation to which we have referred, expressly authorized the injury in question, without at the same time providing means of relief and indemnification, would the act, so far as it conflicted with the plaintiff's rights, be operative? The constitution (art. 1, s. 21) says, "No man's property shall be taken by law, without just compensation." As we are advised, a proper construction of the word "taken" makes it synonymous with seized, injured, destroyed, deprived of. It is, therefore, evident that the legislature have no power to authorize, in any case, either a direct or consequential injury to private property, without compensation to the owner. If, then, such a grant, when expressly made, would be in conflict with the constitution, we are not allowed to infer that such an authority was intended to be granted, from the mere

fact that a railroad was authorized.   It seems to follow that
the defendants having voluntarily, and for their own profit,
so constructed their road as necessarily to injure the plain-
tiff, there being no remedy given by their charter, are liable
in the present action.

*Hooker* v. *The New Haven and Northampton Company,*
14 Conn. R. 153, goes the full length of this case.   There,
the act complained of was a lawful act.   It was done
with prudence and care, and the injury to the plaintiff
was consequential.   Still, the company was subjected.
See, also, 15 Conn. R. 312; 2 Johns. Ch. 162; and 4 Eng.
L. & Eq. R. 265.   This conclusion, we are aware, is in
conflict with at least one adjudicated case.   *Hatch* v. *The
Vermont Central Railroad Co.,* 1 Am. Railroad Cases,
170.   Still the plaintiff's right of action is, in our opinion,
fully sustained, both upon principle and the weight of
authority.

*Per Curiam.*—The judgment is affirmed, with 5 per cent.
damages and costs.

*S. Judah* and *J. P. Usher*, for the appellants (1).

*R. Crawford*, for the appellee (2).

(1) For the appellants.

The company is organized under the following acts of the legislature of
Indiana: Act of *January* 2, 1849, Special Acts 1849, ch. 189, p. 273.   Act
of *February* 6, 1851, Special Acts 1851, ch. 62, p. 96.   Act of *February* 13,
1851, Special Acts 1851, ch. 234, p. 420.   Act of *March* 4, 1853, Special Acts
1853, ch. 9, p. 111.

There is another act, that of *February* 8th, 1851, Special Acts of 1851, ch.
344, p. 535, which was never adopted by the company, and is repealed by the
act of 4th *March*, 1853, ch. 101, p. 119.

By the act of 1849, p. 273, in section 9, it is made the duty of the company,
to apply for an assessment of damages for land or material taken.

By the same section, it is provided that the value of any benefits to the owner,
&c., shall be considered.

And by the act of *February*, 1851, ch. 234, p. 420, s. 2, the owners of land
*taken*, are authorized to make application for an assessment of damages, pro-
vided they do it within two years.

Hence, since *February*, 1851, damage might have been assessed on the appli-
cation of either party.   By the act of 1849, s. 15, p. 279, authority is given to
the company to cross rivers, &c.; and by s. 17 of the same act, it is provided
that the company "shall not impair navigation;" and by the act of *January*
21, 1850, not included above, Special Acts of 1850, p. 350, s. 18, p. 354,
authority is again conferred on the company to construct embankments, abut-

Nov. Term,
1857.

THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.
v.
DICK.

Nov. Term,
1857.

THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.
v.
DICK.

ments, &c., across streams of water, so as not *materially* to obstruct navigation.

The question is, can a suit be sustained for the recovery of consequential damages, caused by a work authorized by law, constructed in a proper place' and manner, when the law authorizing the work neither gives such damages, nor authorizes such suit? The following cases are conclusive, so far as discussion in other states will confirm the principles recognized in this Court; and they are not contradicted anywhere:

No remedy at law. *Mason* v. *Kennebeck & Portland Railroad Co.*, 31 Maine R. 215, 1 Am. Railr. Cas. 162.—*Aldrich* v. *Cheshire Railroad Co.*, 1 Foster, 356, Am. Railr. Cas. 208.—*Bloodgood* v. *Mohawk & Hudson Railroad Co.*, 14 Wend. 51, 2 Am. Railr. Cas. 415.—*Beekman* v. *Saratoga & Sch. Railroad Co.*, 3 Paige, 45, 2 Am. Railr. Cas. 503; and any number of other cases may be collected. The cases in 14 Wendell 51, and 3 Paige 45, are also authorities to determine some questions sometimes doubted, in relation to the constitutional guarantees for compensation, and for trial by jury. For compensation, if it is not provided in the act of incorporation, the owner must look to the legislature. 2 Am. R. Cas. 419 and 527, 528. The provision as to the jury trial, only relates to issues of fact in Courts of justice. 2 Am. R. Cas. 528. The latest case on the subject is *Hatch* v. *Vermont Central Railroad Co.*, of which there is a statement in the note, at p. 170 of 1 Am. R. Cases, and which should be reported in 26 Vermont Reports. The case was decided in 1853, and the opinion is given at length in Livingston's Law Magazine for *January*, 1854, p. 39. It is much labored, and we quote some of the conclusions.

"From all these considerations and authorities, we must infer that the defendants are not liable, upon general principles, for necessary consequential damages," caused by "the prudent erection or operation of defendant's road." "But so far as this Court has been able to learn, merely consequential damages to land not taken, when no statute provisions on the subject exist, have never been regarded as entitling the party to compensation from the state or corporation."

The subject of complaint is the erection of an embankment across low land, over which the water of the river passes at high flood. This is, in effect, a levee. Every levee on the bank of a river must cause an increase of the quantity of water, and of the force of its current, against and over the opposite bank. But there is no case of damages claimed—much less allowed—for these erections. Such erections are common on all rivers—very common on the lower *Mississippi*; and there are three in the vicinity of *Vincennes*, one near *Busseron Prairie*, and one immediately below *Vincennes*, and one below *Russelville*, in *Illinois*. The prohibition of levees—and the allowance of damages, would amount to a prohibition—would amount to the prohibition of the reclamation of all overflowed lands. We submit that it is only the bed of the stream that belongs to the public; that above the ordinary high-water line, the owner of the bank has the absolute control of the land, and may place on it any erection lawful elsewhere. *Fitchburg Railroad Co.* v. *Boston and Maine Railroad Co.*, 3 Cush. 58, 1 Am. Railr. Cas. 508; and *Davidson* v. same, 3 *id.* 91, 1 Am. R. Cas. 534, at pages 542 and 546 of 1 Am. R. Cas., in which it is said and repeated, in relation to a railroad structure over flats, that the legislature have the right "to regulate a navigable stream," as the public convenience may require; and if some damage is done to riparian proprietors, it is "*damnum absque injuria.*" But the

authorities go further and show, not only that there is no suit for damages, consequent to a proper exercise of authority, but that consequential damages can only be given on appraisement, under the acts of incorporation, where actually allowed by the acts. *Dodge* v. *Essex*, 3 Met. 380, 1 Am. R. Cas. 336. The statute is stated at p. 337, "all damages ;" and the Court say (p. 338) that the damage claimed '" is both within the letter and the equity of the statute." The same statute governed *Ashby* v. *The Eastern Railroad Co.*, 5 Met. 368, 1 Am. R. Cas. 356, and *Parker* v. *The Maine Railroad Co.*, 3 Cush. 107, 1 Am. R. Cas. 547. There are some other cases that require notice : A suit for consequential damages was sustained in *Bradley* v. *The New York & New Haven Railroad Co.*, 21 Conn. R. 294, 2 Am. R. Cas. 145. But the decision is put by the Court, (2 Am. R. Cas. 157–185) that the charter required the payment "of all the damages which shall arise to any person or persons," before the company could claim any benefit from their charter. In one place the words of the act were, "taken or injured ;" and so, again, "all damages as above." *Hooker* v. *New Haven & Northampton Company*, 14 Conn. R. 146, is explained by the same Court, in *Burroughs* v. *Housatonic Railroad Co.*, 15 Conn. R. 124, 2 Am. R. Cas. 30, and is placed on the ground of neglect, (p. 37); and *Gardner* v. *Newburgh*, 2 Johns. Ch. 162, was decided on the ground that the charter made no provisions for damages, and was therefore unconstitutional; a doctrine now overruled in all the states.

(2) For the appellee.

The defendant relies upon two grounds for reversing the judgment.

I. The company's charter provides a special remedy for all damages caused by the construction of the road, and that remedy only can be pursued.

1. But that is not correct. The charter provides for assessing certain kinds of damages only. The provision is, (Spec. Acts 1849, p. 276, s. 9,) that "all lands and real estate entered upon for materials or the roadway, which are not donated to or owned by the company, shall be purchased by them of the owners;" and if they cannot agree upon the price, the agent of the company may apply to some justice of the peace, to have six freeholders sworn to assess the damages. Now, *Dick's* land was not "entered upon for materials or roadway." This case is one, therefore, for which the charter does not provide this special remedy.

2. If, however, this case had been provided for especially by the charter, the company has not availed herself of the remedy there given. That (sec. 9, *ubi supra*,) required her to apply to to the justice, to cause the damages to be assessed. *Dick* could not make the application. She has not made it. Her charter, therefore, cannot protect her when she has not followed its directions.

3. The defendant's counsel assume that the act of 1851, (Spec. Acts 1851, p. 420, s. 2,) gave the land owner the right to apply to a justice and have his damages assessed, if the company failed to do so. But it is not shown that the latter act was ever accepted by the company. The legislature had no power to amend the company's charter, unless by her consent, or unless the president and directors violated some of the privileges conferred on them. (Spec. Acts 1849, p. 285, s. 42.) No such consent or violation is alleged or proved, and it does not, therefore, appear that the act of 1851 has anything to do with the case, and the Court below may have so found.

II. It being conceded that the plaintiff's damages were not caused by "en-

Nov. Term, 1857.

The Evans-
ville and
Crawfords-
ville Rail-
road Co.
v.
Dick.

Nov. Term, 1857.

THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.
v.
DICK.

tering on his land for materials or road bed," and could not, therefore, have been assessed by a justice calling in six freeholders, it is next contended by the defendant, that no matter what amount of other damages may have been caused by the proper construction of her road, she is not liable to pay for them.

1. Such a defense is entitled to no favor. It violates the plainest principles of right. This company has voluntarily and for her own profit, so constructed her road as necessarily to injure the plaintiff, and now she says he has no remedy. Justice as well as law cries out in such a case, *Sic utere tuo ut alienum non lædas*. *Grotius, Puffendorff*, and *Bynkershoek* "all lay it down as a clear principle of natural equity, that the individual whose property is thus sacrificed must be indemnified." *Gardner* v. *Newburgh*, 2 Johns. Ch. 166. And the common law provides a remedy for every such wrong. "In all cases where a man has suffered a temporal loss or damage by the injury of another, he may have an action on the case." Com. Dig. Action on the Case. A. If, then, the defendant's charter has given the plaintiff no new remedy, he has that which the common law gave him. And the wrong-doer here is a corporation, whose charter is to be construed strictly against, her, and liberally in favor of other persons. *Bradley* v. *New York and New Haven Railroad Co.* 21 Conn. R. 306. She can have no more right to violate a great principle of natural equity than a private citizen. *Hooker* v. *New Haven and Northampton Company*, 15 Conn. R. 322.

2. Although the words of our constitution (Art. 1, s. 10) are, "no man's property shall be taken by law," yet the meaning is, that no man shall be deprived of his property by law, without just compensation. It is obvious there is no more power to do it indirectly than directly. *Fletcher* v. *Auburn and Syracuse Railroad Co.*, 25 Wend. 464.

3. But it is not true that, when the charter provides no remedy for injuries caused by the construction of such a work, the injured party can have no other remedy. On the contrary, where the injury is not provided for at all in the charter, a corporation is liable for the injuries she may cause in the construction or management of her work, to the same extent and in the same manner as an individual would be for causing similar injuries. In *Hooker* v. *New Haven and Northampton Company* (15 Conn. R. 312), the canal and waste weirs were constructed and used under the direction of commissioners appointed by the legislature, in a prudent and judicious manner, and the waste weirs were necessary to discharge the surplus water of the canal. In using the waste weirs the surplus water ran over *Hooker's* land and damaged it; but as little injury was done as possible, and the damages were the unavoidable consequence of the proper use of the canal and waste weir. It was held that as *Hooker's* land was not taken and paid for under the charter, he was entitled to receive compensation for the injury in an action on the case.

In *Bradley* v. *New York and New Haven Railroad Co*, (21 Conn. 295), the defendant did not take any of *Bradley's* land, but in grading her road, she had, on one side, dug the adjoining land so deep as to injure the foundations of the plaintiff's building, and on the other, had raised an embankment in the street so as to obstruct the use of the plaintiff's property; and the defendant plead that the road was located and made in a manner expressly approved by the legislature, and without any unnecessary damage to the plaintiff; it was held, on demurrer, that the plaintiff was entitled to recover for the damage.

In *Fletcher* v. *Auburn and Syracuse Railroad Co.* (25 Wend. 462), where the defendant, in constructing her road across a public highway, raised an embankment, by which the owner of the adjoining land was obstructed in passing to and from the highway, and his property otherwise rendered less valuable; notwithstanding the charter authorized the use of the highway, it was held an action lay by the owner against the company. It was not pretended the railroad was not constructed in a proper manner. But it was decided that the charter protected the company, if she complied with its provisions, from an indictment or any interference with the work as a public nuisance; but not against claims for private damages arising from consequential injuries to adjoining owners. And the Court was of opinion that if the charter had been broad enough to protect the company against all consequential injuries to private citizens, it would have been a violation of the fundamental law of the land. And see *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; *Sinnickson* v. *Johnson*, 2 Harrison, 129; *Stein* v. *Burden*, 24 Ala. 130.

In *Lawrence* v. *Great Northern Railroad Co.*, (4 Eng. L. and Eq. R. 265), a railway was constructed across low land, adjoining the river *D.*, over which the flood waters of that river used to spread themselves. These low lands were separated from the plaintiff's land by a bank, constructed under certain drainage acts, which protected the plaintiff's lands from the flood. By the construction of the railway without sufficient openings, the flood waters could not spread themselves as formerly, but were penned up and flowed over the bank upon the plaintiff's lands. There was no express clause in the charter requiring the defendant to make openings for flood waters in that district, but there was a general provision, that the defendant should make openings where the railway crossed any public drains, embankments, or works in any drainage district. It was held that the action lay against the company for the injury to the plaintiff's lands. There is a close analogy between the case last cited and our own.

In *Tate* v. *Ohio and Mississippi Railroad Co.* (7 Ind. R. 480), this Court held, that the defendant was liable to pay the plaintiff-the damages he had sustained by the defendant's raising an embankment along the street in front of the plaintiff's lot. It was not a claim for land taken under the charter, but was for consequential damages only; there was no provision in the charter for its payment. We suppose this case should be regarded as conclusive.

There are numerous other cases to the same effect. All those quoted above, were actions at law or in chancery; none of them were to enforce the statutory remedy, none of them were for land or materials actually taken, but all for consequential injuries.

In *Mason* v. *Ken. and Port. Railroad Co.* (31 Maine R. 215,) nothing was decided, except that the statute gave a remedy for the plaintiff's injury, and he was bound to pursue it. In *Aldrich* v. *Cheshire Railroad Co.* (1 Fost. 359,) it was also decided that the statute gave a remedy for the plaintiff's damages, and as he had pursued it and received his damages under it, that was final and conclusive, and he could not sue at law for further damages. The case of *Beekman* v. *Sar. and Sch. Railroad Co.* (3 Paige, 45,) decides only that a statute, authorizing the defendant to take lands for a railroad on making compensation upon appraisement by commissioners, was constitutional, and that after just compensation had been so made to the plaintiff, he could not enjoin the defendant from taking the land. *Bloodgood* v. *Mohawk and Hud. Railroad Co.*

Nov. Term,
1857.

THE EVANS-
VILLE AND
CRAWFORDS-
VILLE RAIL-
ROAD CO.
v.
DICK.

(14 Wend. 51,) was reversed in the Court of Errors. 18 Wend. 10. The cases in 3 Cush. 58 and 91, were claims for damages, caused to the plaintiff's property between high and low water mark *on tide waters*, by the construction of defendants' railroad. Now, the settled law is, that the owner of lands adjoining such waters, owns to *high* water mark only. Generally, the lands are not granted below that, but they are used, and wharves and other improvements erected upon them, by the license of the state and subject to its control. 2 Kent's Comm. 427.—*Lansing* v. *Smith*, 4 Wend. 21.—*Gould* v. *Hudson River Railroad Co.*, 2 Seld. 522. But on the *Ohio* and its tributaries, the rule is different: here the riparian proprietor owns down to ordinary *low* water mark. *Stinson* v. *Butler*, 4 Blackf. 285.—*Bowman* v. *Wathen*, 2 McLean, 376. It is notorious that the bottoms of our rivers below high water mark, were surveyed and sold by the general government, and are as much the exclusive property of the purchaser and his assigns as the adjoining uplands. Therefore the rules applicable to tide water flats do not apply to our river bottoms; permitting the former to be taken for railroads, is rather a grant of the public property, than an exercise of the right of eminent domain; but authorizing the latter to be taken, is an exercise of that right, and the injury must be paid for.

The opinion in *Hatch* v. *Ver. Cen. Railroad Co.* (Liv. Law Mag. Jan. 1854, p. 39,) does not state the facts with sufficient particularity to show whether the decision is in favor of the appellant or not. Its only statement is that *Hatch's* claim was for consequential damages to premises of his, lying near the railroad of the defendants, but not taken for the purpose of the road, and the damages occurring in consequence of the use of the road. But that the *Vermont* Court did not mean to decide any principle hostile to that contended for here, is clear from another part of the same opinion, (Liv. Law Mag. Jan. 1854, p. 43,) upon *Whitcomb's* claim against the same company. It was for "an injury occasioned by the want of a sufficient sluice or culvert, which it was the duty of the defendants to build." The charter required that "all watercourses and streams should be restored to their former state and usefulness as near as practicable." And it was decided that the company was liable for the damages. That is especially applicable to *Dick's* case. He claims damages for an injury occasioned by the want of a sufficient sluice or culvert, which it was the duty of the defendants to make. If sufficient sluices had been left open, so that the flood waters could have run off by the bayou and low bottoms, *ut semper currere solebant*, he would have sustained no injury. It was the defendant's duty to leave them open.

4. The counsel for the defendant suppose the doctrine is overruled in all the states, that a charter is unconstitutional and void if it makes no provision for paying for private property taken for public use; and that the case of *Gardner* v. *Newburgh*, (2 Johns. Ch. 162,) which was decided on that principle, is of no authority. On the contrary, we submit, that doctrine is well established law in nearly all of the states, perhaps all but *South Carolina*, whose constitution does not enjoin it. 2 Kent's Comm. 339.—*Hartwell* v. *Armstrong*, 19 Barb. (S. C.) 171.—*Gould* v. *Glass*, *id.* 179.—*Stein* v. *Burden*, 24 Ala. R. 130.—*State* v. *Dawson*, 3 Hill (S. C.) 100. This Court has repeatedly recognized it, and especially in a late case of the *New Albany and Salem Railroad Company*. Its equity is so obvious that it was the law of imperial *Rome*. (Tacit. Ann. b. 1, s. 75.) It has for centuries been the law of *England*, where charters are granted by an *omnipotent* parliament.

5. We submit there is nothing peculiar in the power to authorize levees. If they are to be raised on the flats of tide waters, the legislature may have full power to authorize them, because such lands belong to the public; 2 Kent's Comm. 427; if on the bottoms of our *Indiana* rivers, which are private property, they can no more be taken or flooded or otherwise injured, for that, than for any other public improvement, without just compensation to the owner.

*Nov. Term, 1857.*