Louise F. SHORT, Appellant,

v.

TEXACO, INC., Robert Braselton, Electra Fields, Charles Braselton, Chester Braselton, Robert E. Braselton, Clifford N. Braselton, Osborne T. Braselton, Jr., David E. Burkhart, John P. Braselton, Rosa G. Burkhart, D. W. Mayhew d/b/a Mayhew Oil and Gas Development, De-Beers Diamond Investment, Ltd., Appellees,

State of Indiana, Intervenor.

Ulysses G. WALDEN, Jr. and Carolyn Sallee Walden, Appellants,

v.

Eden H. POND, Edna H. Bobe and Consolidation Coal Company, Appellees,

Louise F. Short, Intervenor.

Nos. 179S23 and 1278S303.

Supreme Court of Indiana.

June 23, 1980.
Rehearing Denied Sept. 24, 1980.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Verner P. Partenheimer, Jr., Princeton, for appellant Short.

Charles R. Nixon, Princeton, for appellants Walden.

Theodore L. Sendak, Atty. Gen., Indianapolis, for amicus curiae.

John L. Carroll, Russell T. Woodson, Evansville, for appellees Texaco, Inc. et al.

James M. Buthod, Mark W. Rietman, Evansville, for appellees Pond et al.

DeBRULER, Justice.

The trial court declared Ind.Code §§ 32–5–11–1 through 32–5–11–8, the Mineral Lapse Act, unconstitutional. The Act puts an end to interests in coal, oil, gas or other minerals which have not been used for twenty years. The "use" of a mineral interest which continues it in force includes actual production, payment of rents, royalties or taxes, or the filing of a claim in the dormant mineral interest record in the recorder's office. It granted owners of mineral interests a two year period of grace after its effective date in which to file the claim and preserve the interest. This is an appeal from two judgments below, consolidated here, that termination of an interest under the Act is contrary to due process, equal protection, and the guarantee of just compensation for property taken by the State.

The Act reflects the legislative belief that the existence of a mineral interest about which there has been no display of activity or interest by the owners thereof for a period of twenty years or more is mischievous and contrary to the economic interests and welfare of the public. The existence of such stale and abandoned interests creates uncertainties in titles and constitutes an impediment to the development of the mineral interests that may be present and to the development of the surface rights as well. The Act removes this impediment by returning the severed mineral estate to the surface rights owner. There is a decided public interest to be served when this occurs. The extinguishment of such an interest makes the entire productive potential of the property again available for human use.

The trial court concluded that the legislative purpose of the Act is to facilitate the exploitation of energy sources and accepted such purpose as legitimate. While all its conclusions are not entirely clear, it went on to void the entire statute because it determined among other things that due process of law required the divestiture of the vested mineral interest to be preceded by due process notice and an opportunity to be heard.

■ Interests or estates in oil, gas, coal and other minerals lying beneath the surface of the land are interests in real estate for our purposes here, and as such are entitled beyond question to the firmest protection of the Constitution from irrational state action. They are vested property interests separate and distinct from the surface ownership. The State has no power to deprive an owner of such an interest without due process of law. They are entitled to the same protection as are fee simple titles. They are themselves of great utility and benefit to the society as a means of facilitating the development of natural resources.

■ Courts of this state and nation have always given due regard to constitutional constraints upon their authority to void statutes. In doing so in *Noel v. Ewing*, (1857) 9 Ind. 37, we said:

"It is due from the judiciary to sustain and reconcile their enactments, if possible. We will not lightly conclude that the law-making power has either ignorantly or wilfully violated the constitution. To justify the Courts in declaring an act void, it must be clearly subversive of that instrument. (Citations omitted.)

They who claim that the legislature has, in this particular, transcended its constitutional power, should be prepared to make a strong and clear case. All doubts must fall in favor of the validity of the law." 9 Ind. at 43.

We reaffirm again now in this case our adherence to this vital principle.

In *Chicago and North Western Transportation Co. v. Pedersen,* (1977) 80 Wis.2d 566, 259 N.W.2d 316, the Supreme Court of Wisconsin voided a similar act which directed that mineral rights revert to the surface fee ownership if they were not registered or taxes had not been paid on them. That statute was deemed contrary to procedural due process in that the mineral interest owner was not given notice or an opportunity to be heard prior to the reversion of his interest to the surface rights owner. That court relied upon *Mullane v. Central Hanover Bank & Trust Co.,* (1950) 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, and *Bell v. Burson,* (1971) 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90. The court below took the same tack in voiding the Indiana Act.

In *Mullane, supra,* primarily relied upon by the trial court, the United States Supreme Court said:

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

\*    \*    \*    \*    \*    \*

An elementary and fundamental requirement of due process *in any proceeding* which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Emphasis added.) 339 U.S. at 313, 314, 70 S.Ct. at 656, 657.

In *Mullane* the bank petitioned a court for settlement of an account of a trust fund, and the sufficiency of publication notice to beneficiaries was the issue. Notice was due to the beneficiaries because a tribunal was about to adjudicate upon their property. The Mineral Lapse Act in contrast is self-executing and does not contemplate an adjudication before a tribunal before a lapse occurs. When the statutory conditions exist the lapse occurs. *Mullane* does not support the trial court conclusion that notice and hearing are due to a mineral interest owner prior to the occurrence of an extinguishment.

*Bell v. Burson, supra,* relied upon by the trial court does not support the conclusion either. There a Georgia law provided that the drivers license of an individual motorist involved in an accident is to be automatically suspended without notice or hearing if security was not posted to cover the damages claimed by aggrieved parties in the accident reports. In the course of holding this system violative of procedural due process the court specifically noted:

"If the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment. (Citations omitted.) It does not follow, however, that the amendment also permits the Georgia statutory scheme where not all motorists, but rather only motorists involved in accidents, are required to post security under penalty of loss of the licenses." 402 U.S. at 539, 91 S.Ct. at 1589.

Thus, even in *Bell,* a case involving a different complex of social concerns, there is this language supportive of the Act under consideration. It would support as consistent with procedural due process a legislative enactment which declared no more than that all licenses issued by the state would cease to be valid on a date certain in the future unless proof of financial responsibility were filed. Cf. *Frost & Frost Trucking Co. v. Railroad Commission,* (1926) 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101. Such a hypothetical statute would be very similar in operation to the Act being questioned in this case.

The Act under question does not provide for any adjudicatory process by a court or administrative agency. The absence of such a provision is not, we think, invalidating. The Act simply spells out the conditions which when existing mandate the extinguishment of an interest. If a court should be called upon to determine whether such conditions arose in a particular case so as to have effected the loss of an interest, the owner of such interest would be entitled to notice and an opportunity to be heard. Prior to any extinguishment the owner of an interest will have had notice by reason of the enactment itself of the conditions which would give rise to an extinguishment and at a minimum a two year opportunity to prevent those conditions from occurring by filing a statement of claim. *Anderson National Bank v. Luckett,* (1944) 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692. That procedure is both simple and inexpensive. Based upon the foregoing analysis we do not find the case of *Chicago & North Western Transportation Co. v. Pedersen, supra,* persuasive.

The reasoning of the trial court and the cases relied upon by it do not warrant the conclusion that the Act is unconstitutional because it fails to afford notice and hearing to mineral interest owners required by procedural due process.

The trial court also concluded that the extinguishment of mineral interests under the Act constituted a taking of property without due process of law. Judge Young for the Fourth District Court of Appeals summarized the due process analysis applicable here in *Foreman v. State ex rel. Department of Natural Resources,* (1979) Ind. App., 387 N.E.2d 455:

"The government has the inherent power or 'police power' to enact laws, within constitutional limits, to promote order, safety, health, morals, and the general welfare of society. . . . Property rights are not absolute and may be restricted by legislation which constitutes a proper exercise of the State's police power. . . . Legislation is a proper exercise of the police power when the collective benefit to the general public outweighs the restraint imposed. . . . The methods or means used to protect the public order, health, morals, safety or welfare must have some reasonable relation to the purpose or end sought." 387 N.E.2d at 460.

Study of this Act reveals that its outstanding feature is its declaration that mineral interests are terminable. Whatever may be the exact legal dimensions of such interests, they are not greater than fee simple titles. Under the statute of limitations and the law of adverse possession a fee simple title to land is terminable. The Mineral Lapse Act can be viewed as vesting legal title in the owner of the surface rights which is free of the mineral servitude when the conditions required by it exist. A statute of limitations vests legal title in an adverse possessor as against the true legal owner when the conditions required by it exist. *Brown v. Anderson,* (1883) 90 Ind. 93. Statutes of limitation are statutes of repose founded upon a rule of necessity and convenience and the well-being of society. *Chase Securities Corp. v. Donaldson,* (1945) 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628. This Act is also based upon the same rule. Cf. *Love v. Lynchburg National Bank and Trust Co.,* (1965) 205 Va. 860, 140 S.E.2d 650. We do not disregard the distinctions between the two types of statutes. The element of possession is different. No cause of action has arisen in the owner of the mineral interest which is required to be prosecuted. Given these differences and aforementioned similarities, we believe that this Act is, according to its principal intent and effect, and for the purpose of constitutional analysis, analogous to acts of limitation which vests title to real and personal property.

Acts of limitation are not per se unconstitutional as impairing the obligation of contracts or as denying a person property without due process of law. This is so even though they extinguish the right of the party having a true title and vest a perfect title in the adverse holder. *Hawkins v. Barney's Lessee,* (1831) 5 Pet. 457, 8 L.Ed.

190, is an early case upholding the validity of a seven year limitation upon actions to recover possession of land in Kentucky. In the course of that opinion it is said:

> "It is argued, that limitation laws although belonging to the lex fori, and applying immediately to the remedy, yet indirectly they effect a complete divesture and even transfer of right. This is unquestionably true, and yet in no wise fatal to the validity of this law. The right to appropriate a derelict is one of universal law, well known to the civil law, the common law, and all law; it existed in a state of nature, and is only modified by society, according to the discretion of each community."

The transfer of right upheld by the court was deemed the indirect product of the limitation law. The transfer or right effected by the Indiana Act under consideration is its direct product. That minor difference would not support a contrary evaluation of our Act.

In *Terry v. Anderson*, (1877) 95 U.S. 628, 24 L.Ed. 365, Chief Justice Waite stated the general rule regarding the manner in which statutes of limitation are received by courts:

> "This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect. . . .
>
> In all such cases, the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the legislature is primarily the judge; and we cannot overrule the decision of that department of government, unless a palpable error has been committed." 95 U.S. at 632–633.

Indiana is in accord with the rule stated and the reasoning behind it. *Guthrie v. Wilson*, (1959) 240 Ind. 188, 162 N.E.2d 79; *Sansberry v. Hughes*, (1910) 174 Ind. 638, 92 N.E. 783. In *Terry* the court held that the period of nine months and seventeen days

given to sue upon a cause of action was not unconstitutional. In *Turner v. People of State of New York*, (1897) 168 U.S. 90, 18 S.Ct. 38, 42 L.Ed. 392, a statute declaring that past sales and conveyances by a comptroller for nonpayment of taxes would be conclusively presumed regular six months after the effective day of the statute was upheld as providing a reasonable period for bringing an action. Pursuant to Ind.Code § 32–5–11–4, owners of mineral interests are granted a minimum of two years in which to act to preserve their interests. Such a period of grace would constitute a reasonable time as contemplated by these cases.

In *Wilson v. Iseminger*, (1902) 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804, the United States Supreme Court upheld a statute which barred actions to recover ground rents and extinguished totally the right to recover further such rents, after twenty-one years had expired during which no declaration or acknowledgment of the existence of the right or claim had been made. The statute provided that the bar and extinguishment would not be effective until three years after the passage of the act. The court held that the act gave a reasonable time to the owners of the ground rents for preserving their rights. This case strongly supports the validity of our Act, because it upheld a statute having an extinguishment feature similar to the Indiana Act under consideration.

The purposes of this Act as stated above at the beginning of this opinion are to remedy uncertainties in titles and to facilitate the exploitation of energy sources and other valuable mineral resources. The dependence of local economies upon the mineral recovery industry and the entire State upon limited fossil fuel resources illustrates the public nature of these purposes. The objectives are valid and similar to those served by acts of limitation and the law of adverse possession. In limiting its incursion upon mineral rights to those which have been unused in the statutory sense for as long as twenty years, and in granting a two year period of grace after

the enactment of the statute to preserve interests, the Legislature adopted means which are rationally related to such objectives, and which themselves provide a reasonable time and a simple and inexpensive method, taking into consideration the nature of the case, for preserving such interests. We find that this Act is within the police power of the states and does not unconstitutionally impair the obligation of contracts.

The trial court's judgment is arguably based upon the conclusion that the statute effectuates a taking of property without just compensation contrary to the mandate of Art. I, § 21, of the Indiana Constitution. We agree with appellant that extinguishment of mineral interests under this statutory scheme does not involve an exercise by the State of its power of eminent domain. The State through this statute is not actually taking the mineral interest for its own use and benefit. Consequently, Art. I, § 21, does not provide an applicable standard for review of this statute. *Buckler v. Hilt,* (1936) 209 Ind. 541, 200 N.E. 219; *Foreman v. State ex rel. Department of National Resources, supra.* Appellees point to *Evansville & Crawfordsville R. R. Co. v. Dick,* (1857) 9 Ind. 433, in which this Court stated:

"[T]he legislature have no power to authorize, in any case, either a direct or consequential injury to private property, without compensation to the owner." 9 Ind. at 436.

This statement in context gave support to the court's ruling that the power of eminent domain cannot serve as a source of immunity from suits for damages for injury to private property. The Mineral Lapse Act does not involve the injury to private property through conduct or activities of governmental agents or others having and exercising the power of eminent domain. It declares instead that a lapse of a mineral interest will occur in the event of specified conditions and circumstances. We are satisfied that substantive due process provides the proper standard for constitutional review of it.

Appellant next contends that the trial court erred in concluding that the Act is violative of the guarantees of Art. I, § 23, of the Indiana Constitution and the Fourteenth Amendment of equal protection of the law by reason of the special treatment afforded certain owners of mineral interests described in Ind.Code § 32–5–11–5. That provision states:

"Failure to file a statement of claim within the time provided in section 4 shall not cause a mineral interest to be extinguished if the owner of such mineral interest:

(1) was at the time of the expiration of the period provided in section four, the owner of ten or more mineral interests, as above defined, in the county in which such mineral interest is located, and;

(2) made diligent effort to preserve all of such interests as were not being used, and did within a period of ten years prior to the expiration of the period provided in section 4 preserve other mineral interests, in said county, by the filing of statements of claim as herein required, and;

(3) failed to preserve such interest through inadvertence, and;

(4) filed the statement of claim herein required, within sixty days after publication of notice as provided in section seven herein, if such notice is published, and if no such notice is published, within sixty days after receiving actual knowledge that such mineral interest had lapsed."

By declaring the mineral interest terminable under the conditions set forth in the other sections of the Act, the Legislature sought to create an environment in which mineral interests will be promptly exploited or abandoned. If achieved, this objective would create economic benefits for the people and industries within local communities where actual development activities result and would create other land development where abandonment results. The criteria in Ind.Code § 32–5–11–5, can be rationally conceived as establishing a border line beyond which strict application of the Act's extinguishment standards would become destructive of these goals. Minerals exist

within the earth in strata and formations which do not necessarily coincide with the manner in which man has chosen to divide the surface area. Consequently it is commonly necessary to assemble several mineral interests in order to render the extraction of minerals safe and profitable. The Legislature could reasonably have concluded that those meeting the criteria set forth above include those most likely to assemble such interests and actually produce minerals. The separate classification of interests so held within these essential clusters is rationally related to the legitimate objectives of the enactment and is consequently not contrary to the requirements of state and federal equal protection.

The Act seeks to remedy a situation thought to retard economic activity vital to the welfare of local communities and the general public as well. The classification erected does not involve a suspect classification or an impingement upon the exercise of a fundamental right, and consequently the traditional fair and substantial relation test is applicable to it. *Johnson et al. v. St. Vincent Hospital, Inc. et al.,* Ind., 404 N.E.2d 585 (1980); *Steup, et al. v. Indiana Housing Authority,* Ind., 402 N.E.2d 1215 (1980). In this area of economic and social concern, legislative choices are entitled to a large degree of deference from the court. They are not required to be made with mathematical precision or along entirely logical lines. *Williamson v. Lee Optical of Oklahoma,* (1955) 348 U.S. 483, 487, 75 S.Ct. 461, 464, 99 L.Ed. 563; *Indiana Aeronautics Com'n v. Ambassadair Inc.,* (1977) 267 Ind. 137, 368 N.E.2d 1340.

> "In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines, see, e. g. *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 423, [72 S.Ct. 405, 407, 96 L.Ed. 469] (1952); in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *City of New Orleans v. Dukes,* (1976) 427 U.S.

297, 303–304, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511.

There has been no demonstration made which convinces us that the classification of Ind.Code § 32–5–11–5 is invidiously discriminatory or wholly arbitrary.

The judgments of the trial court here appealed from declaring the statute unconstitutional are reversed and the cases remanded to the trial court for enforcement of the Act.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.