**MENNONITE BOARD OF MISSIONS, INC., Defendant-Appellant,**

v.

**Richard C. ADAMS, Plaintiff-Appellee.**

**No. 3–780A217.**

Court of Appeals of Indiana,
Third District.

Oct. 29, 1981.

Rehearing Denied Dec. 8, 1981.

C. Whitney Slabaugh, William J. Cohen, Slabaugh, Cosentino, Walker & Shewmaker, Elkhart, for defendant-appellant.

Robert W. Miller, Miller & Miller, Elkhart, for plaintiff-appellee.

STATON, Judge.

The Mennonite Board of Missions, Inc. (MBM) appeals an adverse summary judgment quieting title to certain real property in Richard C. Adams. MBM urges the following issues for our review:

(1) Whether the pre-tax sale notice provisions under the tax sale statutes[1] meet constitutional due process standards;[2]

(2) Whether notice of the right of redemption under the tax sale statutes is sufficient to meet constitutional due process standards; and,

(3) Whether the discrimination between owners and mortgagees in notification of the tax sale is violative of constitutional equal protection standards.

The trial court upheld the tax sale statutes against these constitutional challenges and we affirm that decision.

In 1973 Alfred Jean Moore executed a mortgage upon her real property in favor of MBM to secure an indebtedness of $14,000. Under the terms of the mortgage, Moore was obligated to pay the property taxes, but after 1974, she failed to pay them. The property was sold to Adams at a tax sale on August 8, 1977 for $1,167.75. On August 10, 1979, Adams received a tax deed to the property which he recorded on August 14, 1979. On August 16, 1979, MBM first learned of the above events when Moore informed MBM that "she was in trouble." Throughout the above period of time Moore had continued to make her mortgage payments, but still owed $8,237.19 on the indebtedness.

On November 1, 1979, Adams filed an action to quiet title naming MBM and Moore as defendants.[3] Moore failed to contest the action and Adams was granted a default judgment. On February 26, 1980, summary judgment was granted quieting title in Adams and all liens, including that of MBM's mortgage interest, against the property were extinguished.[4]

We note at the outset that MBM must meet a severe test in challenging the constitutionality of the tax sale statutes. The challenging party has the burden to present a strong and clear case establishing the unconstitutionality of the statutes. The court reviewing such challenge not only presumes the statutes are constitutional, but accords the statutes all reasonable presumptions supporting their validity. *Short v. Texaco* (1980), Ind., 406 N.E.2d 625, ap-

1. "Tax sale statutes" are used to collectively refer to those statutes controlling the sale of real property for failure to pay taxes, Ind.Code §§ 6–1.1–24–1 to –12 (1976 & Supp.1980); and, those statutes controlling either the redemption of or the quiet title action to that property, Ind.Code §§ 6–1.1–25–1 to –19 (1976 & Supp. 1980).

2. MBM also challenges the correctness of the decision in *First Federal Savings and Loan Association of Central Indiana v. Furnish* (1977), Ind.App., 367 N.E.2d 596, which addressed this

same issue; and whether, if correctly decided, *Furnish* controls the outcome in this case.

3. MBM was a necessary party-defendant under IC 6–1.1–25–14.

4. Under IC 6–1.1–25–4, the execution of the tax deed vests in the grantee a fee simple absolute estate free and clear of all liens. The quiet title action may be instituted to finalize that action, but the tax deed becomes absolute after one year. IC 6–1.1–25–17.

peal pending, 450 U.S. 993, 101 S.Ct. 1693, 68 L.Ed.2d 192; *Johnson v. St. Vincent Hospital, Inc.* (1980), Ind., 404 N.E.2d 585. As recently stated by our Supreme Court in *Short, supra* :

> "Courts of this state and nation have always given due regard to constitutional constraints upon their authority to void statutes. In doing so in *Noel v. Ewing*, (1857) 9 Ind. 37, we said:
>
>> 'It is due from the judiciary to sustain and reconcile their enactments, if possible. We will not lightly conclude that the lawmaking power has either ignorantly or wilfully violated the constitution. To justify the Courts in declaring an act void, it must be clearly subversive of that instrument. (Citations omitted.)
>>
>> 'They who claim that the legislature has, in this particular, transcended its constitutional power, should be prepared to make a strong and clear case. All doubts must fall in favor of the validity of the law.' 9 Ind. at 43.
>
> "We reaffirm again now in this case our adherence to this vital principle." (parentheses original)

406 N.E.2d at 627–28.

### I.

### Pre-tax Sale Notice

MBM first challenges the notice requirements under the tax sale statutes. Specifically, MBM alleges that the notice to mortgagees of the sale of property for delinquent taxes does not meet due process standards. This identical issue was addressed by the Second District of this Court in *First Savings and Loan Association of Central Indiana v. Furnish* (1977), Ind.App., 367 N.E.2d 596.

The *Furnish* Court found the notice to mortgagees sufficient and upheld the constitutionality of the tax sale statutes. There has been no significant change in this area of the law since the *Furnish* decision. We are in agreement with the result reached therein and find no need to further examine that issue.

MBM attempts to distinguish the facts of the present case from those facts underlying the *Furnish* decision. The only significant factual distinction is that the mortgagee in the *Furnish* case had actual knowledge, unlike MBM in the present case, of the tax sale *after* the sale but during the redemption period. The *Furnish* Court specifically stated, however, that the issue addressed was "whether due process entitles a mortgagee to actual notice of a tax sale rather than constructive notice (publication)." (parentheses original) 367 N.E.2d at 599. Further, our examination of the *Furnish* decision reveals that the mortgagee's actual knowledge of the sale after the date of the sale was not determinative of the outcome of that issue. Notice after the date of the tax sale, whether actual or constructive, was not relevant to the issue addressed. Therefore, MBM's attempt to distinguish *Furnish* upon the facts is without merit.[5]

### II.

### Notice of Redemption Right

MBM makes a second challenge to the constitutionality of the notice provisions

---

**5.** MBM points out a further factual distinction between the *Furnish* case and the present case. In *Furnish*, the mortgagor became delinquent in the payment of the mortgage principal as well as in the payment of the real estate taxes. In the present case, the mortgagor was always current in her monthly mortgage payments. Assumedly, though not specifically argued, MBM is again asserting that the mortgagee in *Furnish* had actual knowledge of the tax sale. As stated above, notice after the sale is not pertinent to the issue presented in *Furnish* or in this case. Additionally, whether the mortgagee obtains knowledge of the tax sale by means other than notice given under the tax sale statutes is not pertinent to the issue presented. Again, the issue presented in *Furnish* and in this case is whether the *tax sale statutes* give sufficient notice. Whether the mortgagee obtains actual knowledge of the tax sale by means other than the operation of the statutes is not pertinent. The mortgagee in *Furnish* may well have obtained its actual knowledge of the tax sale when pursuing the reason for the delinquency of the mortgage payments. If so, such knowledge was obtained by means other than the operation of the tax sale statutes and is, therefore, not pertinent to the issue presented.

under the tax sale statutes. MBM alleges that the fact the statutes provide no notice to the mortgagee of the right of redemption[6] after the tax sale violates due process standards. However, MBM cites to no authority, and we find none, for the proposition that the State must provide notice to interested parties of their right of redemption.

We find the recent case of our Supreme Court, *Short, supra,* controlling. In *Short,* the Court addressed a constitutional challenge to the Mineral Lapse Act (MLA), Ind.Code §§ 32–5–11–1 to –8 (Supp.1980). The MLA terminates interests in mineral rights not "used"[7] for a twenty year period. The termination occurs without notice, other than the enactment of the MLA, to the owner of the interest. Upon enactment, the MLA granted mineral interest owners a two year period of grace to effect a qualifying "use" to preserve the interest. Addressing a challenge that the MLA provided insufficient notice to interest owners under due process standards, Justice DeBruler wrote:

"Prior to any extinguishment the owner of an interest will have had notice by reason of the enactment itself of the conditions which would give rise to an extinguishment and at a minimum a two year opportunity to prevent those conditions from occurring . . . . *Anderson National Bank v. Luckett,* (1944) 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 . . . ."

406 N.E.2d at 629.

■ As in *Short,* all mortgagees have notice of the right of redemption by the enactment of the tax sale statutes and a grace period of two years granted by those statutes to protect their interests. Under the controlling precedent of *Short,* we find MBM's constitutional challenge to be insufficient.

### III.

### Equal Protection of Notice

And finally, MBM challenges the statutory scheme of classification regarding notice requirements under the tax sale statutes. MBM alleges the discrimination between owners and mortgagees is violative of the equal protection requirements of the United States and Indiana constitutions.[8]

■ In addressing an equal protection challenge:

"If neither a fundamental right nor a suspect classification is involved, the standard of review is that the classification not be arbitrary or unreasonable . . . and that a 'fair and substantial' relationship exist between the classification and the purpose of the legislation creating it . . . ."

*Sidle v. Majors* (1976), 264 Ind. 206, 210, 341 N.E.2d 763, 767. The classification scheme here under review does not involve either a fundamental right or a suspect class. *See, Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520.

■ Under the tax sale statutes, notice of the tax sale is posted and published. IC 6–1.1–24–3. Only owners of the real property upon which the delinquent taxes are owing receive notice by mail. IC 6–1.1–24–4. We find that statutory scheme to be reasonable and to have a fair and substantial relationship to the purpose of the legislation.

First, this classification may well evidence the Legislature's concern with the mortgagor-homeowner. The mortgage has traditionally been the financial vehicle upon which the ownership of a home has been pursued. And, traditionally, the law has

---

**6.** The tax sale statutes provide for the possible redemption of the tax sale property. IC 6–1.1–25–1 to –19. Any party with an "interest" in the property may redeem the property. *Id.* at –1. The mortgagee clearly falls within the category of interested parties with the right of redemption. *Furnish, supra,* 367 N.E.2d at 600.

**7.** IC 32–5–11–3; *Short, supra,* 406 N.E.2d at 627.

**8.** Equal protection under these federal and state constitutions are coextensive. *Huff v. White Motor Corp.* (7th Cir. 1979), 609 F.2d 286; *Sidle v. Majors* (1976), 264 Ind. 206, 341 N.E.2d 763.

ensconced the rights of homeowners in the safety of significant procedural protections. *See, e. g., Walker v. City of Hutchinson* (1956), 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178; *Fritz v. Board of Trustees of Town of Clermont* (1969), 253 Ind. 202, 252 N.E.2d 567. This statutory scheme recognizes both the financial and protective traditions of this society.

Secondly, the obvious underlying purpose of the tax sale statutes is to insure the collection of delinquent taxes. In achieving that purpose, the Legislature has provided for notice to all interested parties by means of posting and publication. This is in addition to the common knowledge that real property taxes are due and owing upon an annual basis and that property may be sold if not paid. The classification scheme here challenged merely provides for a more certain form of notice to the real property owners. Those individuals, whether homeowners, as in the present case, or business owners as in the *Furnish* case, or any other type of owners, were deemed by the Legislature to be entitled to a greater form of notice than society as a whole. We cannot say that is an arbitrary or unreasonable classification. Neither can we say that the overall notice scheme of the tax sale statutes does not have a fair and substantial relationship to the purpose of collecting delinquent taxes.

And finally, there is a very real and substantial reason for the differing treatment of owners and mortgagees. As stated by the Court in *Furnish*:

> "It is understandable why actual notice has not been extended to mortgagees. Most mortgagees are in the business of lending money, and as professional money lenders prudence requires them to be

aware of conditions involving their collateral. Normally, they can be expected to protect their interest by keeping records of the mortgagor's discharge of his obligations, such as payment of taxes, insurance, principal and interest installments." 367 N.E.2d at 601.[9]

Finding no constitutional infirmity, we affirm the trial court.

HOFFMAN, P. J., and GARRARD, J., concur.

---

9. Though MBM may not be a professional money lender, it freely chose to enter an area of sophisticated financial investment and thereby necessarily chose to incur the risk inherent therein. The State cannot reasonably be expected to assume the risk of its citizens' business ventures. MBM could have protected itself in one of at least three ways, in addition to the notice provided by the State. First a condition of the mortgage could have required a copy of the paid tax assessment be given to MBM within a given time after the taxes were due. Second, the mortgage could have provided that a portion of each payment be put in escrow and MBM then pay the tax assessment. Or third, MBM could have checked the public records to determine whether the tax assessment had been paid. We also note that after January 1, 1981, the mortgagee may be provided with notice by mail of any property subject to a tax sale by filing the appropriate form and paying a minimal fee. IC 6–1.1–24–4.2.