Robert R. KIRBY, Margaret M. Kirby, Husband and Wife, Oakley Gryder, Myrtle Gryder, Husband and Wife, Defendants-Appellants,

v.

ASHLAND OIL, INC., Larry Wayne Brown, Charlene J. Brown, Husband and Wife, et al., Plaintiffs-Appellees.

No. 1–983A309.

Court of Appeals of Indiana, First District.

May 29, 1984.

Rehearing Denied July 6, 1984.

Verner P. Partenheimer, C. Dean Higginbotham, Hall, Partenheimer & Kinkle, Princeton, for defendants-appellants.

Jack R. Brenton, Evansville, for plaintiffs-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The Kirbys and Gryders appeal from a Pike Circuit Court's granting of summary judgment in favor of certain owners of mineral interests thereby quieting title to the interests in those owners.

We reverse.

## FACTS

On November 15, 1982, Ashland Oil, Inc., pursuant to Indiana Rules of Procedure, Trial Rule 22, filed its complaint in interpleader naming as defendants the Kirbys and several other individuals owning mineral interests in the Kirbys' land.[1] In its complaint, Ashland alleged it had purchased crude oil produced from a 38 acre tract located in Pike County and that the Kirbys, owners of the surface of the subject property, and members of the Brown Group, owners of the mineral interests thereto, were embroiled in a dispute as to royalties owing from Ashland's purchase. According to the Kirbys, the mineral interests held by the Brown Group had lapsed pursuant to the Indiana Dormant Mineral Act, Indiana Code sections 32–5–11–1 to 8 (1980 Repl.). Members of the Brown Group denied a lapse had occurred and claimed they were entitled to the $2,300 in royalties being held by Ashland.

Shortly after Ashland's complaint was filed, Oakley and Myrtle Gryder petitioned to intervene in the action, claiming they, like the Kirbys, were surface owners of the land in which the Brown Group's mineral interests had lapsed. Thereafter, on February 4, 1983, the Kirbys and Gryders filed a cross-claim in which they requested the trial court to quiet title to the mineral interests in them. They subsequently moved for summary judgment as to their cross-claim and on June 16, 1983, the trial court rendered its judgment. Therein, the court found that:

"(2) The granting of an oil and gas lease on August 10, 1959, and as extended by written and recorded extensions until February 10, 1961, and the subsequent granting of oil and gas leases on September 9, 1980, December 4, 1980, and January 3, 1981, by the owners of the several mineral interest [members of the Brown Group], is [sic] a sufficient preserving use of the mineral interest to satisfy the requirements of I.C. 32–5–11–3 and thereby preserve the mineral interest."

Record at 60. Accordingly, the trial court granted summary judgment in favor of the Brown Group. It is from this decision that the Kirbys and Gryders now appeal.

## ISSUES

Combined and restated, the issue presented for review is whether the leases granted by members of the Brown Group constituted a sufficient use of their mineral interests under Indiana Code section 32–5–11–3 to prevent a lapse.

## DISCUSSION AND DECISION

At issue in the present case are the provisions of the Indiana Dormant Mineral Act concerning the lapse of interests thereunder. This being a case of first impression, we begin with the statutory language.

Indiana Code section 32–5–11–1 provides:

"Any interest in coal, oil and gas, and other minerals, shall, *if unused* for a period of 20 years, be extinguished, unless a statement of claim is filed in accordance with section five [32–5–11–5] hereof, and the ownership shall revert to

---

1. The other individuals named were: Larry and Charlene Brown; Arthur and Barbara Coleman; Lawrence and Mary Black; Harry and Sadie Black; John and Diane Dyer; Julia and William Eubanks; Dennis and Beulah Tyring; Virgil and Aileene Tyring; Minnie and Wayne Corne; and Hattie Tharp. These individuals were all successors in interest to the mineral rights reserved by Robert O. Brown in a warranty deed dated August 28, 1912. Hereinafter, they will be collectively referred to as the "Brown Group".

the then owner of the interest out of which it was carved."

*Id.* (emphasis supplied). The crucial question thus becomes, insofar as the present case is concerned, what type of conduct is sufficient to constitute a use of one's interest and whether the leasing of an interest serves as a qualifying use. Again, we must turn to the statutory language for guidance.

"A mineral interest shall be deemed to be used when there are any minerals produced thereunder or when operations are being conducted thereon for injection, withdrawal, storage or disposal of water, gas or other fluid substances, or when rentals or royalties are being paid by the owner thereof for the purpose of delaying or enjoying the use or exercise of such rights or when any such use is being carried out on any tract with which such mineral interest may be unitized or pooled for production purposes, or when, in the case of coal or other solid minerals, there is production from a common vein or seam by the owners of such mineral interests, or when taxes are paid on such mineral interest by the owner thereof. Any use pursuant to or authorized by the instrument creating such mineral interest shall be effective to continue in force all rights granted by such instrument."

Indiana Code section 32–5–11–3.

As the parties' briefs reflect, the aim of the Act is to eliminate title problems resulting from long held mineral interests which have remained inactive for extended periods of time.[2] Expanding on this theme, our supreme court has declared:

"The Act reflects the legislative belief that the existence of a mineral interest about which there has been no display of activity or interest by the owners thereof for a period of twenty years or more is mischievous and contrary to the economic interests and welfare of the public. The existence of such stale and abandoned interests creates uncertainties in titles and constitutes an impediment to the development of the mineral interests that may be present and to the development of the surface rights as well. The Act removes this impediment by returning the severed mineral estate to the surface rights owner. There is a decided public interest to be served when this occurs. The extinguishment of such an interest makes the entire productive potential of the property again available for human use."

*Short v. Texaco, Inc.,* (1980) 273 Ind. 518, 406 N.E.2d 625, 627, *aff'd* 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

■ In the instant case, the Kirbys and Gryders contend the mere act of leasing one's mineral interests is not a sufficient "use" to prevent a lapse under the Act. We agree.

■ Viewed in its component parts, Indiana Code section 32–5–11–3 provides for three qualifying uses. They are: (1) actual production by the owner; (2) paying of rents or royalties by the owner for purposes of delaying production;[3] and (3) payment of taxes on the mineral interests by

2. The author of the Act, Professor Ronald W. Polston, explained the problem in these terms:

"It is becoming increasingly apparent in jurisdictions which have a long established coal or gas industry that something must be done to eliminate title problems stemming from mineral conveyances executed in years gone by. The problem results from the fact that perpetual or very long term mineral interests may be created during a period of activity in a particular industry, and these interests do not terminate when the activity ceases. Ownership of minerals may thus be lodged in individuals who have long disappeared from the area, leaving no trace, and making it impossible to further develop the mineral estate at this time."

Polston, *Legislation, Existing and Proposed, Concerning Marketability of Mineral Titles,* 7 Land & Water Rev. 73, 73 (1972) (footnote omitted).

3. The Brown Group would argue our interpretation of this portion of the section is erroneous in light of the United States Supreme Court's holding in *Texaco, Inc. v. Short,* (1982) 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738. There, the Court affirmed the Indiana Supreme Court's holding that the Act was constitutional and did not deny due process to mineral interest owners when their interests lapsed. In dictum, the Court intimated that under the Act an owner of

the owner. Conspicuously absent is any provision stating that the granting of a lease by the owner constitutes a use sufficient to preserve a mineral interest.[4] Consequently, the trial court erred as a matter of law when it found the interests held by the Brown Group were preserved by their granting of leases.[5]

Finding the trial court's granting of summary judgment contrary to law, we reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

NEAL, P.J., and ROBERTSON, J., concur.

mineral interests could prevent a lapse by *collecting* rents or royalties. *Id.* at 527, 102 S.Ct. at 792, 70 L.Ed.2d at 751. Thus, the Brown Group contends the consideration paid to them by the lessees of their interests qualified as a preserving use of their interests. Notwithstanding the Supreme Court's interpretation, we must reject their argument. Not only is the language of the Court dictum, but more importantly we are not bound by its interpretation of Indiana statutory law. *Fletcher v. Weir*, (1982) 455 U.S. 603, 605, 102 S.Ct. 1309, 1311, 71 L.Ed.2d 490, 493.

Furthermore, the interpretation is clearly wrong. Indiana Code section 32–5–11–3 plainly states that rents or royalties must be *"paid* by the owner thereof", not collected. *Id.* (emphasis supplied). The Brown Group's argument based

upon the Supreme Court's interpretation thus fails.

4. A statutory scheme which does so provide is Mich.Stat.Ann. section 554.291 (1967). *See Van Slooten v. Larsen*, (1980) 410 Mich. 21, 299 N.W.2d 704, *appeal dismissed* 455 U.S. 901, 102 S.Ct. 1242, 71 L.Ed.2d 440 (1982) (statute held constitutional). For a review of other state's statutory schemes *see* Annot., 16 A.L.R. 4th 1029 (1982).

5. By so holding, we believe the purposes of the Act are also achieved. The Act clearly envisions an active use of mineral interests *by the owner*. Thus, a mere lease of an owner's interest to another party fails to achieve this purpose.