**Vivian McCOY, Plaintiff,**

v.

**Harry E. RICHARDS, Florence A. Richards, Ashland Oil Company, Defendants.**

**No. EV 82–48–C.**

United States District Court, S.D. Indiana, Evansville Division.

Oct. 11, 1984.

---

K. Richard Hawley, Mt. Vernon, Ind., for plaintiff.

James E. Fields, Doran E. Perdue, Evansville, Ind., for defendants.

## MEMORANDUM OF DECISION

BROOKS, District Judge.

This matter is presently before the Court upon the agreement of the parties, that in lieu of a formal trial, the Court may render a decision in this cause based upon the trial briefs submitted, the stipulations of fact filed herein, the depositions of Vivian McCoy and Harry E. Richards, and the complaint, answer and other pleadings which have been filed in this case.

The Court having considered the briefs of the parties filed herein, the evidence present in the record, as well as the law applicable to the facts of this case, now enters its Findings of Fact and Conclusions of Law in memorandum form pursuant to Rule 52(a), Federal Rules of Civil Procedure.

In August, 1942, Harry and Florence Richards (hereinafter "Richards") deeded to Vivian McCoy and Oscar McCoy (hereinafter "McCoys") thirty three and one-half (33.5) acres of land in Posey County, Indiana. At the time of the conveyance to the McCoys, the Richards reserved a one-half (½) interest in the minerals in and under said land. On March 31, 1951 and June 29, 1951 the McCoys and the Richards, respectively, leased their interests in the oil and gas underlying the thirty three and one-half (33.5) acres to Superior Oil Company for a primary term of three (3) years. Each lease provided that if drilling operations were not commenced within one (1) year from the date of the execution of the lease the lease would terminate unless delay rental was paid, in which case drilling operations could be deferred for successive one (1) year periods during the primary term of the lease. According to the deposition testimony of Harry Richards, payment under the lease with Richards was made for the first year only, no drilling operations were commenced, and the lease was therefore terminated.

The next recorded transactions involving the mineral interests in the subject property occurred in 1960. On October 4, 1960, the McCoys entered into a three (3) year oil and gas lease with one Forest Lindsay. Two days later Lindsay executed another lease agreement with Edmond Richards, a brother of Harry Richards. While this lease covered property in which the record interests were owned by Edmond Richards, it also included that portion of the interest in the thirty three and one-half (33.5) acres of which Harry and Florence Richards were the record owners and in which Edmond Richards had no recorded interest. It is undisputed that no drilling operations were commenced by Lindsay under the provisions of either of these leases and presumably the leases terminated at the end of, or prior to, the three (3) year term.

In June and July of 1973 the McCoys and the Richards, respectively, conveyed by deed their interests in the coal only to Seneca Coal Corporation and Ohio Valley Coal Company. No other activity with respect to the parties' interests in the thirty three and one-half (33.5) acre tract occurred until mid 1980. At that time Vivian McCoy, whose husband had died, and the Richards executed oil and gas leases for a term of one (1) year to Coy Oil Incorporated. Both leases provided that the lessee could pool or unitize the leases with either other land or other leases, and an oil well was in fact started and completed to production within the one (1) year period under the McCoy lease on land other than the thirty three and one-half (33.5) acre tract involved herein. On July 10, 1981, no drilling having been commenced on the thirty three and one-half (33.5) acre tract, Coy Oil Incorporated secured a new lease from the Richards and by January, 1982 a producing oil well had been drilled thereon.

On February 9, 1982 plaintiff, Vivian McCoy, commenced this action in the Posey Circuit Court seeking an order quieting title to the thirty three and one-half (33.5) acre tract in question as against all claims of the Richards for the reason that under the Indiana Dormant Mineral Interests Act, Indiana Code 32–5–11–1 *et seq.*, the Richards' one half (½) interest in the minerals had terminated because of non-use and failure to file a statement of claim. Ashland Oil Company was named as a defendant to answer as to its interest since Ashland was purchasing oil from the producing oil wells on the property in question. The case was subsequently removed to this Court by the Richards on February 26, 1982 pursuant to Title 28 Sections 1332 and 1441(a).

Thereafter, the Richards filed a motion for summary judgment and McCoy filed a motion for partial summary judgment on the narrow issues of whether the 1973 conveyance of Richards' interest in the coal only to Ohio Valley Coal Company constituted a sufficient use under the Indiana statute so as to preserve to the Richards their interests in all other minerals, and whether the filing of the deed conveying the coal was sufficient to constitute a filing of a statement of claim under the statutory scheme. The Court in its memorandum order dated November 23, 1983 found, that while the Richards' conveyance of the coal to Ohio Valley created a new mineral interest pursuant to Indiana Code 32–5–11–2, the conveyance was insufficient to constitute a use under Indiana Code 32–5–11–3. In addition, the Court found that the filing of the deed reflecting Richards' conveyance of their interest in the coal did not literally or substantially comply with the statement of claim provision of the Dormant Mineral Interest Act. *See, McCoy v. Richards,* 581 F.Supp. 143 (S.D.Ind.1983).

In light of the Court's earlier ruling, with respect to the 1973 conveyance, the remaining issue to be decided, and the one which the parties have consented to the Court determining without a plenary trial, is whether under the facts as recited above the Richards' interest in the thirty three and one-half (33.5) acre tract has, pursuant to Indiana Code 32–5–11–1 *et seq.*, lapsed.

The Indiana General Assembly, on September 2, 1971 enacted the Dormant Mineral Interests Act, Indiana Code 32–5–11–1 *et seq.*, which provided in pertinent part that:

Any interest in coal, oil, gas and other minerals, shall, if unused for a period of 20 years, be extinguished unless a statement of claim is filed in accordance with section five [32–5–11–5] hereof and the ownership shall revert to the then owner of the interest out of which it was carved. IC 32–5–11–1.

Section 4 of the Act (I.C. 32–5–11–4) provided for a two (2) year grace period from the effective date of the Act for the filing of a statement of claim which would preserve an outstanding mineral interest. Section 3 (I.C. 32–5–11–3) provided for essentially three types of activities which, when engaged in by the owner of the mineral interest, would be deemed "uses" for purposes of the statute. They are:

(1) actual or attempted production of the minerals,

(2) payment of rents or royalties, and

(3) payment of taxes on the mineral interest.

As the Court noted in its memorandum order of November 23, 1983 there are few cases which deal with Indiana's Dormant Mineral Interests Act, although numerous articles have been written which discuss, in varying degrees, the Act's provisions. *See, e.g. Legislation, Existing & Proposed, Concerning Marketability of Mineral Titles,* 7 Land & Water L.Rev. 73 (1972); *Constitutionality of Retrospective Land Statutes—Indiana Model Dormant Mineral Act,* 12 Ind.L.Rev. 455 (1979); *Clearing Mineral Titles By Statute After Texaco v. Short,* 3 Eastern Mineral Law Foundation 25 (1982); *Validity & Construction of Statutes Providing For Reversion of Mineral Estates For Abandonment or Non-Use,* 16 A.L.R.4th 1029 (1982). The leading case, and until very recently the only case, which dealt specifically with the Act is *Short v. Texaco, Inc.,* 273 Ind. 518, 406 N.E.2d 625 (1980), aff'd 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed. 738 (1982). *Short* involved two cases which had been consolidated on appeal, in which the owners of mineral interests sought to attack the constitutionality of the Dormant Mineral Interest Act on the grounds that allowing the

mineral interest to revert to the then owner of the interest out of which it was carved was a violation of their rights to due process, equal protection, and the guarantee against the taking of property without just compensation. The trial court entered a judgment declaring the Act unconstitutional. However, upon appeal the Indiana Supreme Court reversed, holding that the termination of mineral interests under the Act was not contrary to due process, equal protection, or the guarantee of just compensation for property taken by the state. Upon appeal to the United States Supreme Court, the decision of the Indiana Supreme Court was affirmed in a 5–4 decision, the majority finding that the Act furthered the legitimate state goals of encouraging mineral interest owners to develop such interests and of collecting property taxes. Unfortunately, neither of the Supreme Courts in upholding the constitutionality of the Act had an occasion to address any of the issues which Richards' have raised in the present case.

While acknowledging that since the decision in *Short* the question of the constitutionality of the Indiana Act has, for better or worse, been resolved, the Richards nevertheless argue that on the facts of this case there are compelling reasons to justify a finding that the interest in issue here has not lapsed under the statutory scheme. First, it is contended that the question of whether or not there is a "use" of the mineral interest must be examined with an understanding of the natural resource industry and its customs and usages. It is the Richards' position that the only practicable method available for small interest owners to "use" their mineral interests is by selling or leasing their interests to those in the industry who have the capability to explore for and extract minerals. Thus, the Richards argue that the act of executing a lease should qualify as a "use" of the mineral interest.

Indiana Code Section 32–5–11–2 defines a mineral interest as follows:

A mineral interest shall be taken to mean the interest which is created by an in-

strument transferring, either by grant, assignment, or reservation, or otherwise an interest, of any kind, in coal, oil and gas, and other minerals.

The definition of qualifying "uses" of a mineral interest, as noted earlier, appears in Indiana Code Section 32–5–11–3 which provides that:

A mineral interest shall be deemed to be used when there are any minerals produced thereunder or when operations are being conducted thereon for injection, withdrawal, storage or disposal of water, gas or other fluid substances, or when rentals or royalties are being paid by the owner thereof for the purpose of delaying or enjoying the use or exercise of such rights or when any such use is being carried out on any tract with which such mineral interest may be unitized or pooled for production purposes, or when, in the case of coal or other solid minerals, there is production from a common vein or seam by the owners of such mineral interests, or when taxes are paid on such mineral interest by the owner thereof.

■ A fair reading of the above sections reveals two very important points bearing upon the question of whether a lease constitutes a "use". One, the execution of a mineral lease effects a transfer of an interest in the minerals covered by the lease, and thus under the statute creates a new mineral interest. Two, conspicuously absent from the section defining "uses" is any provision which would indicate that the sale or lease of a mineral interest constitutes a "use" sufficient to prevent a lapse. Thus, despite Richards' argument to the effect that the only practicable "use" an owner may make of his interest is by selling or leasing, the Court is of the opinion that the express language of the statute prohibits a finding that the sale or lease of a mineral interest is, of itself, a "use" of that mineral interest. Accordingly, the Court finds that the granting of the oil and gas leases by the Richards, as outlined above, created new mineral interests in the lessees and did not constitute a "use"

which is sufficient to preserve their mineral interest. *Kirby v. Ashland Oil, Incorporated,* 463 N.E.2d 1127 (Ind.App. 1st Dist. 1984).

There still remains, however, the question of whether when a mineral lease is granted, the lessee's "use" of the mineral interest inures to the benefit of the lessor so as to preserve the lessor's interest in the minerals. It is at least arguable that it should, based upon the theory that the lessor is a beneficial interest owner of the minerals which are the subject of the lease. It would appear that Indiana, at least with respect to oil and gas interests, recognizes that it is the aggregate of all rights in lands affecting oil and gas that comprise an estate in such lands. *See* Indiana Code 32–5–7–1(b). Whether that statute has the practical effect of making lessors and lessees, in some sense, "co-owners" of the minerals involved is not entirely clear. What is clear is that leases, unlike the outright sale of a mineral interest which divests the former owner of all interest in the mineral sold, generally give the lessor an interest in the minerals produced in the form of rents or royalties.

To allow a lessor of a mineral interest to benefit from the lessee's "use" would not, in the Court's opinion, thwart the legitimate state goals of encouraging development of mineral resources or the collection of taxes. If the lessee "uses" his interest, development of the mineral resource is accomplished, and the lessor's interest is preserved because he is a "co-owner" of the minerals. Alternatively, it could be argued that the lessor, as a beneficial owner, is "using" his interest under Indiana Code Section 32–5–11–3 when he presumably pays taxes upon the rents or royalties he receives as a result of his ownership of the beneficial interest. If, on the other hand, the lessee fails to "use" his interest, no benefit would insure to the lessor, the lessee's interest would revert, and the lessor could then elect to "use" his interest or risk having the interest lapse.

■ The Court, however, does not deem it necessary, under the facts of this case, to

decide the question of whether a lessee's "use" should inure to the benefit of the lessor so as to preserve the lessor's interest for two reasons. First, the Richards' lease to Superior Oil Company was executed in 1951, and it is evident from an examination of both Harry Richards' deposition and the lease itself that this lease expired in 1952. Thus, even if Superior's payment of delay rental in 1951 was a "use" which inured to the benefit of the Richards, thereby preserving their interest for twenty (20) years, such "use" ended in 1952 when the lease was terminated. At that point the Richards either had to "use" their interest in some manner within the twenty (20) years or file a statement of claim prior to the expiration of the grace period provided for in Indiana Code Section 32-5-11-4 in order to preserve their interest. Concededly, no statement of claim was filed and the evidence of record shows that Harry and Florence Richards did not again lease their interest until 1980, well after the expiration of the 20 year period. Second, the 1960 lease to Forest Lindsay was executed by Edmond Richards, who at that time held no record interest in the property in question. The fact that Harry Richards allegedly deeded the mineral interest to Edmond Richards with the understanding that in the event production was commenced the deed would be recorded, has no bearing on the question of whether Harry and Florence Richards' interest is preserved since, whatever the intent of the transaction, the practical effect was to divest Harry and Florence Richards of their interest. Thus, at the time the 1960 lease was executed by Edmond Richards, Harry and Florence Richards would have had no interest to preserve. The Court therefore finds that the 1960 lease between Forest Lindsay and Edmond Richards failed to preserve any reserved mineral interest of Harry and Florence Richards. To hold otherwise would be incongruous since it would allow one who no longer held an interest in minerals to somehow preserve that interest merely because another, to whom the mineral interest had been deeded, made "use" of that interest. In the Court's opinion,

such a result would only serve to further cloud mineral interest titles, thereby running counter to the intent of the statute.

Richards have also argued that the statute involved herein was designed to terminate unknown or lost mineral interests and thus should not apply under the facts of this case since the interest owners were not unknown to each other. While the Court would concede that there is no dispute that the owners of the mineral interests at issue herein were not, in the strict sense, unknown to each other, the Court is nevertheless of the opinion that the Richards are looking at both the purpose and language of the statute with too narrow a perception. Although it is true that some of the articles which have been written describe the purpose of the statute as designed to terminate only "unknown and uncertain claims of persons long lost and unknown", that is too restrictive a view. As the Indiana Supreme Court noted in *Short, supra,* "[t]he purposes of this Act ... are to remedy uncertainties in titles and to facilitate the exploitation of energy sources and other valuable mineral resources." Surely uncertainties in titles may still be cleared up and exploitation of mineral resources facilitated by the Act's provisions even in those cases where the mineral interest owners are not lost or unknown. It is worthy to note that neither the language of the statute nor either of the Supreme Court decisions in the *Short* case limit the lapse of mineral interests solely to those situations where the owners of such interests were unknown. In fact, although it is not entirely clear from the opinions in *Short,* it would appear that the mineral interest owners in that case were not lost or unknown to the owners of the surface rights. The Court therefore finds that, while the statute undoubtedly extinguishes the unused interests of lost and unknown owners, it cannot fairly be read as decreeing a lapse only in those situations where the identity or whereabouts of the mineral interest owner is unknown to the surface rights owner. Accordingly,

Richards' argument in this respect must fail.

■ Relying upon the Supreme Court's decision in *Short*, Richards' third argument is that a lapse of their mineral interest does not become fully effective until after a court has conclusively determined, in a quiet title action, that a mineral interest has reverted to the surface owner. Here, Richards argue, leases were given and actual production was obtained prior to the initiation of this suit. Therefore, since an interest cannot lapse until there is a judicial proceeding, and in this case there was actual use and production prior to such proceeding, there can be no other conclusion reached than that Richards' interest has not lapsed. With this the Court cannot agree.

Contrary to the Richards' interpretation of the Supreme Court's decision in *Short*, the Court does not believe that that decision mandates a judicial proceeding prior to a lapse becoming effective. What the Supreme Court recognized, and Richards fail to note, is the difference between the self executing feature of the Dormant Mineral Interests Act itself and a subsequent judicial determination that a particular lapse did in fact occur.

The Supreme Court in passing upon the constitutionality of the statute was faced with a two fold attack on the question of whether the Act extinguished property rights without adequate notice. The first argument raised by the appellants was that the statute itself failed to provide mineral interest owners with adequate notice. The Court, relying upon the general rule with respect to any legislative enactment affecting substantial rights, found that all property owners within a state were presumed to have knowledge of relevant statutory provisions and to take any action deemed appropriate to protect their interests. Thus, the enactment of the Act itself when combined with the two (2) year grace period in which to file a statement of claim was not constitutionally defective. *Id.* 454 U.S. at 533, 102 S.Ct. at 794.

Appellants' second argument was that a mineral interest could not be extinguished unless the surface owner gave the mineral owner advance notice that the twenty (20) year period of nonuse was about to expire. In addressing this argument, the Court first noted that it was essential to recognize the difference between the self executing feature of the statute and a subsequent judicial determination that a particular lapse did in fact occur. *Id.* at 533, 102 S.Ct. at 794. As the Court stated: "[i]f there has been a statutory use of the interest during the preceding 20–year period ... by definition there is no lapse—whether or not the surface owner, or any other party is aware of that use." Conversely, if there has been no statutory use of the interest within the twenty (20) year period or a statement of claim filed, then by definition there is a lapse of the interest regardless of whether or not the interest owner, or any other party, is aware of the lapse. That is expressly why the statute is self executing. As the Richards correctly point out, the *Short* Court did indicate that before a judgment could be entered in a quiet title action that would determine whether a mineral interest had reverted to a surface owner, the full procedural protections of the Due Process Clause including notice reasonably calculated to reach all interested parties must be provided, however, the Court *did not* find that a lapse only becomes effective after there has been a judicial determination. As the Court reasoned:

[T]he reasoning in *Mullane* [*v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865] is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self executing feature of the Mineral Lapse Act.... [A]ppellants do not challenge the sufficiency of the notice that must be given prior to an adjudication purporting to determine that a mineral interest has not been used for twenty years. Appellants simply claim that the absence of specific notice prior to the lapse of a mineral right renders ineffective the self executing feature of the

Indiana statute. That claim has no greater force than a claim that a self executing statute of limitations is unconstitutional. *Id.* at 535–36, 102 S.Ct. at 795.

In the case *sub judice* Richards, on the basis of the Supreme Court's decision, ask this Court to find that a judicial proceeding is required before a lapse occurs. Based upon this Court's reading of that opinion, however, such a finding is not required or warranted. A lapse occurs automatically when there has been non-use for the requisite period of time or there has been a failure to file a statement of claim. No notice is required to be given to the interest owner at that point in time. If in fact a Court is then asked to determine that a lapse has or has not occurred, notice to all interested parties is constitutionally required.

Under the facts of the present case Harry and Florence Richards' last arguable "use" of their interest ended in 1952 when the lease with Superior Oil Company expired. Therefore, Richards had a twenty (20) year period from 1952 in which to use their interest. Based upon the Court's earlier finding it is clear that no such "use" occurred. It is also conceded that no statement of claim was filed within the two (2) year grace period provided for in Ind. Code Section 32–5–11–4. Thus, it is apparent that, in the absence of a "use" or the filing of a statement of claim, Richards' mineral interest *automatically* lapsed on September 2, 1973 when the two (2) year grace period for the filing of a statement of claim expired. The fact that the Richards again leased their interest in 1980, has no bearing on the question of whether their interest lapsed in 1973, nor is it effective to preserve their interest. At the time the Richards entered into the 1980 lease there had already been a statutory lapse and reversion of their interest. Nothing further was required for their interest to be extinguished. That production from their former interest was obtained prior to the initiation of this action, does not affect the determination of when the lapse occurred. The Court therefore finds that the lapse of Richards' mineral interest occurred in 1973 and that the subsequent production from that interest or adjoining pooled interests did not prevent that lapse or act to revive their interest. The Court further finds, based upon the distinction noted by the Supreme Court in *Short,* that a quiet title action is not necessary to effectuate the lapse of a mineral interest.

■ The Richards have also put forth the argument that this Court should find that their interest has not lapsed because McCoy recognized their interest and failed to take any action until 1982 when this suit was initiated. Vivian McCoy acknowledged in her deposition that she first became aware of the existence of the Mineral Lapse Act through conversations with her neighbors and that some time prior to the filing of this action she had read a newspaper article which dealt with the statute. She also acknowledged that until she became aware of the statute that it was her belief that Richards owned the mineral interest in question.

Based upon this deposition testimony Richards contend that McCoy should be equally bound by the same general rule of "knowing the law" as is imposed on the Richards, and should be required to take some action to enforce her rights, and not slumber on them, until after production of minerals had already been obtained. To find otherwise, in Richards' view, would lead to a wholly inequitable result which serves no justifiable purpose, under either the statute or case law. While the Court agrees that all property owners, including McCoy, are presumed to have knowledge of relevant statutory provisions which effect their interests and to take whatever steps are necessary to protect those interests, the Court is nevertheless not of the opinion that application of that presumption to the facts of this case is as determinative of the issue as Richards seek it to be. Nor does the Court find that resolution of this issue leads to an inequitable result.

Indiana Code Section 32–5–11–6 provides that, "any person who will succeed to the

ownership of a mineral interest, upon the lapse thereof, *may* give notice of the lapse...." (emphasis added). As recognized by both Supreme Courts that section makes provision for, but does not require, that notice of the lapse be given to the interest owner. Nothing in the statute requires the party to whom the interest will revert to take any other action in order to effectuate the lapse. Nor does the statute provide any time limitations in which the succeeding owner must take any action, such as the commencement of a quiet title suit, should they choose to do so. Thus, even if Vivian McCoy is presumed to have knowledge of the provisions of the statute in 1973, when Richards' interest lapsed, there are no requirements that she take any affirmative action to protect her interest or that any action which she might choose to take be commenced within a specified period of time. Simply put, when Richards' interest automatically lapsed in 1973, Vivian McCoy did not have to do anything. The situation is somewhat analogous to that which exists in cases of adverse possession. Once the criteria for establishing adverse possession have been met, the disseisor becomes possessed of a vested right or title to the property without the necessity of further action on the part of the disseisor. Here, once the statutory period of nonuse has been met, and a statement of claim has not been filed, title to the Richards' interest vested in McCoy, without the necessity of further action on her part.

Richards have argued quite forcibly that such a result is inequitable especially where, as is the case herein, McCoy recognized their interest for a substantial period of time and only sought to have title to the interest quieted after production had been obtained. It is not entirely clear what Richards mean when they say that McCoy "recognized" their interest. If they mean that McCoy held a mistaken belief that Richards owned the interest in question and took no steps to question Richards' title until the filing of this action, the Court would agree that in that sense McCoy "recognized" Richards' interest. If, however, Richards mean that McCoy affirmatively

did something to "recognize" their interest, the Court can find no basis in the record to support such an interpretation.

Concededly, in this case production was obtained from the mineral interest prior to the initiation of this suit. The Court however fails to comprehend how that fact alone could, based upon legal or equitable principals, support a finding that Richards' interest has not lapsed. If Richards' argument is accepted, then in all likelihood the succeeding owners in both *Short* and *Kirby, supra*, would have been unable to have the title to the mineral interests involved therein quieted in them, since it appears that in both cases production had been obtained prior to the initiation of any court proceedings. The Court finds it significant that none of the courts which addressed the question of lapse in those cases, found that quieting title in the succeeding owners was inequitable.

Here, as the Court has earlier found, Richards' interest lapsed in 1973, and at that point the title to that interest vested in McCoy. The fact that Richards and McCoy both mistakenly believed that Richards owned the interest in question and failed to take any action to determine who actually had title to the interest, cannot be used to prevent the lapse. Clearly, had Richards been in adverse possession of property other than a mineral right, they could not be heard to complain, prior to the fulfillment of the requirements for acquiring title by adverse possession, of the rightful owner's actions in bringing a quiet title action at *any time* prior to the expiration of the limitation period although they might have some claim had their possession been under color of title. *See, e.g.* Indiana Code Section 34–1–4–1 (allowing possessor of land under color of title to recover for valuable improvements made to the property).

The Court can find no compelling reasons to accord Richards any greater rights than that which would be accorded to an adverse possessor. Accordingly, the Court finds that McCoy's failure to bring this action until shortly after production of minerals had been obtained does not act to either

prevent the lapse of, nor preserve, Richards' mineral interest.

Richards' final argument in support of their position is based primarily upon the articles noted earlier in this opinion and may be viewed as being two-dimensional. First, the Richards point out that Illinois, Minnesota, and Wisconsin have declared Acts, which were similar to Indiana's, unconstitutional, and that Illinois has adopted a new Severed Mineral Interest Act [Public Act 83–571, S.H.A. Chapt. 96½ Section 9201 *et seq.* ] which makes it clear that the Act's provisions do not apply to "known" or "non-lost" owners. Presumably, what the Court is to infer from these facts is that Indiana is out of step with its neighboring states and that the intent of the Indiana Act is to terminate only "unknown" or "lost" interests. Second, the Richards have cited to the Court numerous excerpts from the journal commentators' analyses of how mineral lapse acts, marketable title acts, model recording acts, and uniform simplification of land transfer acts interrelate, and how the latter of such acts might better be used to accomplish the purposes sought to be served by the Indiana Act.

While these scholarly works no doubt raise some interesting questions the Court nevertheless does not find the arguments raised therein to be persuasive. It is true that other states with statutes similar to Indiana's Mineral Lapse Act have, for a variety of reasons, found their statutes unconstitutional. That, however, does not change the fact that both the Indiana Supreme Court and the United States Supreme Court have examined Indiana's statutory scheme and found it to be constitutional. In view of the Supreme Courts' findings of constitutionality this Court fails to see the relevance of other states finding their statutes unconstitutional.

Certainly the legislature could decide that the goals sought to be achieved by the Lapse Act, could be better served by some other statutory scheme, as suggested by the commentators, or by a combination of various statutes which would inter-relate.

That however, is the responsibility of the legislature and not this Court. As the Indiana Supreme Court noted in *Short:*

> ... the judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ...

It is not for this Court to decide whether the intent and purpose of the statute are what the journal commentators suggest they are or whether the goals sought to be achieved might be better served by marketable title acts, model recording acts, or uniform simplification of land transfer acts. The question for the Court to decide is whether, under the facts of this case and the law as it currently exists, Richards' interest has lapsed.

The Court would concede that the statute is, at best, inartfully drawn and in some respects raises more questions than it answers. The statute clearly puts the onus of preserving a mineral interest on the owner thereof and allows that interest to vest in the succeeding owner without the necessity of that party taking any action to vest title in themselves. Whether or not that result is what the author of the statute invisioned is not pertinent to the Court's determination, but it is clear that that is the Act's practical effect, and it has withstood the test of its constitutionality.

Accordingly, based upon all of the foregoing, the Court finds that the mineral interest claimed by the Richards has lapsed, and that title to that interest should be quieted in the plaintiff, Vivian McCoy.

IT IS SO ORDERED.